Raymond COOPER, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 12–93–00318–CR.

Court of Appeals of Texas, Tyler.

May 29, 1997.

Discretionary Review Refused Sept. 10, 1997.

Melvin A. Thompson, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

Raymond Cooper, Jr. ("Appellant") appeals from his conviction of the offense of aggravated assault on a peace officer under Section 22.02(a)(2) of the Texas Penal Code.[1] A jury sentenced Appellant to a term of imprisonment for eighty (80) years. Appellant raises three points of error attacking the trial court's refusal to suppress evidence re-

---

**1.** All references in this opinion to Section 22.02 of the Texas Penal Code are to the version in effect at the time of the offense in 1992:
    Act of June 5, 1991, 72nd Leg., R.S., ch. 334, § 2, 1991 Tex. Gen. Laws 1381, *amended by,*
Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3620 (current version at Tex. Penal Code Ann. 22.02(a)(Vernon 1994)).

sulting from what Appellant alleges was an illegal arrest. We will affirm the conviction.

In his three points of error, Appellant alleges that the trial court erred in failing to grant his motion to suppress because the detention and arrest of Appellant were unlawful and constituted violations of: 1) the Fourth and Fourteenth Amendments to the United States Constitution, 2) Article I, § 9, of the Texas Constitution, 3) Article 38.23 of the Texas Code of Criminal Procedure.[2] Appellant does not specify which evidence the trial court should have suppressed and appears to argue that all evidence, whether related to the initial detention or the subsequent actions giving rise to the charge of aggravated assault, should have been suppressed because the entire incident grew out of the supposed unlawful arrest.

A brief summary of the facts as presented through the trial testimony will be helpful. There was conflicting testimony concerning the events leading up to the arrest of Appellant. Appellant testified outside the presence of the jury during the hearing on the motion to suppress evidence. The arresting officer, K.C. Lust ("Lust"), observed Appellant as he appeared to be reaching into the trunk of a car parked outside of a private club. Lust testified that the Appellant's actions appeared to be suspicious, so he stopped to investigate. When he asked Appellant his name, the Appellant refused to answer and tried to get into the car, which was occupied by three other persons. At some point, Lust grabbed the Appellant's arm to prevent him from getting into the car or leaving the scene. Lust testified that he could smell alcohol on Appellant's breath.[3] Appellant admits that he broke free from Lust's grasp, but Lust testified that Appel-

lant also hit him at this point. Appellant testified that he did not hit Lust but saw Lust reach for his billy club and decided to flee the scene. Lust caught up with Appellant after Appellant tripped and fell, and he attempted to pin Appellant down to make an arrest. Lust testified that Appellant attempted to choke him, and the testimony of the doctor who treated Lust at the emergency room after the incident confirmed that bruises on Lust's neck were consistent with someone having attempted to choke him. Lust stated that he feared he was going to black out when he was being choked, so he reached for his pistol and attempted to point it at Appellant. The two struggled over the pistol, and it fired, missing both men. Lust claimed, and Appellant denied, that Appellant gained control of the gun and pointed it at Lust. Lust stated that he then attempted to push the gun away with one hand while reaching for another, smaller pistol he kept in an ankle holster. He drew the smaller pistol and fired twice at Appellant, wounding him in the stomach.

■ When reviewing a trial court's decision to admit evidence concerning the details of an arrest, the courts of appeal address only the question of whether the trial court properly applied the law to the facts. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Cr.App. 1990). We will reverse the trial court's decision only upon a showing of an abuse of discretion. *Maddox v. State*, 682 S.W.2d 563, 564 (Tex.Cr.App.1985). Though all three of Appellant's points of error attack the trial court's refusal to suppress evidence in the trial, he has not specified which evidence was improperly admitted. Appellant's entire argument focuses on the initial confrontation between himself and Lust and the alleged unlawfulness of Lust's first attempt to detain

---

**2.** The Fourth Amendment applies to the States through the Due Process Clause of the Fourteenth Amendment and provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Article I, § 9 of the Constitution of the State of Texas provides that "the people shall be secure in their persons, houses, papers and possessions, from all unreasonable seizures or searches." Article 38.23(a) of the Texas Code of Criminal Procedure codifies these constitutional provisions and states that "no evidence obtained by an

officer or other person in violation of any provisions of the constitution or laws of the State of Texas, or of the constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case." Tex.Code Crim. Proc. Ann. 38.23(a) (Vernon Supp.1997).

**3.** Trial testimony revealed that Appellant's blood alcohol concentration was over twice the legal limit at the time of his arrest and that he had been smoking marijuana.

him. Because Appellant was charged under Section 22.02 of the Texas Penal Code, however, we must assume that he complains of at least some of the evidence related to the aggravated assault on Officer Lust, in addition to the evidence of the initial stop.

In 1992, at the time of the offense, Section 22.02 provided in pertinent part that a person commits aggravated assault if he intentionally, knowingly, or recklessly "threatens with a deadly weapon or threatens to cause bodily injury or causes bodily injury to ... peace officer ... when the person knows or has been informed the person assaulted is a ... peace officer ... while the ... peace officer ... is lawfully discharging an official duty...." TEX. PENAL CODE § 22.02(a)(2). The aggravated assault becomes a first degree felony if the offense falls under section 22.02(a)(2) and the person uses a deadly weapon. TEX. PENAL CODE § 22.02(c).

The Court of Criminal Appeals has held in several cases that the legality of the initial arrest is irrelevant in certain instances. In *Gonzalez v. State*, 574 S.W.2d 135 (Tex.Cr. App.1978), the court held that the question of whether an arrest was unlawful was irrelevant to the question of the defendant's guilt in a prosecution for aggravated assault on a peace officer under Section 22.02(a)(2) and whether the police officer was acting "in the lawful discharge of official duty" as required under the Penal Code. *Gonzalez*, at 137. The court based its reasoning on Section 38.03 of the Penal Code, which makes it illegal to resist arrest by force and which provides that "[i]t is no defense to prosecution under this section that the arrest or search was unlawful." TEX. PENAL CODE ANN. § 38.03(a) and (b) (Vernon 1994). In a probation revocation case, the Court of Criminal Appeals looked to *Gonzalez* and section 38.03 and held similarly that even if the arrest at issue was unlawful, the trial court did not abuse its discretion in revoking the defendant's probation because he had resisted arrest and assaulted an officer. *Barnett v. State*, 615 S.W.2d 220 (Tex.Cr.App.1981), *cert. dismissed*, 454 U.S. 806, 102 S.Ct. 79, 70 L.Ed.2d 75 (1981), overruled on other grounds by *Moosavi v. State*, 711 S.W.2d 53, 55 (Tex.Cr.App.1986). In *Salazar v. State*, 643 S.W.2d 953 (Tex.Cr.App.1983), though facing a different issue, the court noted that "[i]n *Gonzalez v. State*, we pointed out that ...: a conviction under 22.02(a)(2) [aggravated assault of a peace officer] does not depend on whether the arrest was legal, or on the defendant's belief about its legality." *Salazar*, at 956.

More recently, the Court of Criminal Appeals has extended the reasoning behind these holdings to examine the relevance of the legality of an arrest to the exclusion of evidence under the Texas and U.S. Constitutions and Article 38.23 of the Code of Criminal Procedure. In a prosecution for the crime of resisting arrest under Section 38.03 of the Penal Code, the Court of Criminal Appeals held that it was proper to admit evidence of the resistance because such evidence is not "obtained in violation of the law" as required under Article 38.23 for a violation of constitutional rights to exist. *State v. Mayorga*, 901 S.W.2d 943, 946 (Tex.Cr.App. 1995). The court explained that the phrase "obtained in violation of the law" contained in Article 38.23 "contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the *previously* committed crime." *Id.* at 945–46. (emphasis added). In further support of their reasoning, the Court of Criminal Appeals quoted the opinion of the court of appeals:

> Unlike prior criminal acts to which a defendant confesses or evidence already in existence but found pursuant to a consent to search, evidence that a defendant resisted arrest does not exist before the illegal arrest because the crime of resisting arrest has not yet been committed. In fact when a defendant submits to the arrest as the public policy and the law of this State require, there will be no such evidence.

*Id.* at 946. (quoting *State v. Mayorga*, 876 S.W.2d 176, 178 (Tex.App.—Dallas 1994)). The court further noted that this statutory rule does not run afoul of constitutional protections or unjustly limit the common law rights of defendants:

> Several states have eliminated either by statute or by judicial decision the common law right to resist an unlawful arrest.

This reflects a growing realization that the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned. The line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decided by the courts.

*Id.* at 945 (quoting *Barnett v. State,* 615 S.W.2d at 223).

■ Likewise, in a case of aggravated assault on a peace officer, as in the instant case, the evidence of aggravated assault on the peace officer does not exist at the time a lawful or unlawful arrest is attempted. The evidence relating to the crime of aggravated assault in this case came into existence only after Officer Lust attempted to detain and question Appellant. In authorities such as *Gonzalez* and *Barnett,* the Court of Criminal Appeals relied on the close connection between the crimes of resisting arrest and aggravated assault on a peace officer to dispose of the question of the lawfulness of the arrest, and the connection is no less persuasive here. The reasoning expressed in *Mayorga* for the admission of evidence is even more applicable to a case such as the instant case, where the resistance of arrest went so far as to constitute aggravated assault. We hold that the alleged illegality of the arrest was irrelevant to the crime of aggravated assault on a peace officer in this case. The evidence of the aggravated assault was not "obtained in violation of the law." The trial court, therefore, did not err in refusing to suppress the evidence concerning the aggravated assault.

■ As stated, Section 38.23 of the Code of Criminal Procedure codifies the State and Federal Constitutional bans on the admission of evidence obtained as a result of an illegal search or seizure. In Texas, the courts interpret the provisions of the Texas Constitution to provide at least as much protection for the rights of its citizens as its federal counterpart. *Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Cr.App.1991). Consequently, we may address and dispose of Appellant's claims under the Texas and U.S. Constitutions and the Code of Criminal Procedure together. *See Cook v. State,* 832 S.W.2d 62,

65 (Tex.App.—Dallas 1992, no writ). Therefore, we overrule Appellant's first, second, and third points of error and affirm the judgment of the trial court.