TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-99-00729-CR






The State of Texas, Appellant



v.



Charles Ray Garrett, Jr., Appellee







FROM THE COUNTY COURT AT LAW NO. 5 OF TRAVIS COUNTY


NO. 505,999, HONORABLE MIKE DENTON, JUDGE PRESIDING






 Appellee Charles Ray Garrett, Jr. was charged by information with the
misdemeanor offense of driving while intoxicated ("DWI"). See Tex. Penal Code Ann. § 49.04
(West Supp. 2000). Garrett filed a motion to suppress all evidence obtained at the time of his
detention. The trial court granted the motion in part, ruling that Garrett's arrest without a warrant
was illegal and suppressing all evidence obtained thereafter. The State of Texas appeals from the
trial court's interlocutory order in three points of error, arguing that the DWI arrest was not an
unreasonable search and seizure under the United States Constitution, the Texas Constitution, or
the Texas Code of Criminal Procedure. See U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex.
Code Crim. Proc. Ann. art. 14.01 (West 1977) & art. 38.23 (West Supp. 2000). We will reverse
and render judgment, overruling the trial court's partial granting of the motion to suppress, and
remand this cause to the trial court for further proceedings.


BACKGROUND

 On the night of June 12, 1998, Austin police officer Andrew Sheehan observed
Charles Garrett run a red light at the corner of 38th Street and Red River. Sheehan directed his
partner, Officer John Spillers, to follow Garrett's truck so that they could stop Garrett for the
traffic violation. Garrett turned abruptly into the parking lot of an apartment complex forcing
Spillers to make a U-turn to continue pursuit.

 In the parking lot, Spillers pulled up behind Garrett. Garrett then jumped out of
his truck and walked quickly back toward the officers. While Spillers was on the radio, Sheehan
exited the police car to talk to Garrett. Since police officers are trained to be wary of suspects
who appear nervous and approach officers quickly, Sheehan prepared for a possible confrontation
with Garrett. When Sheehan asked whether Garrett lived in the apartment complex, Garrett
refused to answer. Instead Garrett responded, as transcribed by Sheehan in the offense report,
"Well sir, I know I messed up on that red light, I ran it, and I don't want to disrespect you." 
From this, Sheehan drew the conclusion that by turning into the parking lot, Garrett had been
trying to evade arrest. Sheehan conducted a pat down of Garrett but found nothing suspicious.

 Sheehan observed that Garrett had watery eyes, smelled strongly of alcohol, and
was unsteady on his feet. Officer Sheehan asked Garrett how much he had had to drink that night. 
Garrett replied, "Sir, I don't want to disrespect you." The officer asked again and received a
similar non-responsive answer from Garrett. This time, Garrett volunteered the information that
he had been at a "strip club" called The Lady and that Sheehan should just "do your job and put
me in jail." Sheehan asked a third time and again Garrett failed to respond directly. Garrett did
say that he was a security guard at the University of Texas and that "I don't disrespect police
officers, just put me in jail."

 At this point, Sheehan instructed Spillers to conduct several standard field sobriety
tests on Garrett. Spillers demonstrated the Horizontal Gaze Nastagmus test ("HGN test"), the
walk-and-turn test, and the one-leg-stand test, but Garrett refused to cooperate in any of the tests. 
Having also smelled an odor of alcohol on Garrett, Spillers arrested him. After arresting Garrett,
Spillers conducted an inventory search of the truck and found a half-full bottle of wine inside the
vehicle. The bottle had been closed by reinserting the cork. Garrett was then taken to the police
station where he was videotaped. At that time, Garrett also refused to take a breathalyzer test.

 Garrett was charged by information with DWI. Garrett filed a motion to suppress
all evidence gathered by Officers Sheehan and Spillers before and after the arrest. At the
suppression hearing, Officers Sheehan and Spillers testified to the facts outlined above. At the
conclusion of the hearing, the trial court partially granted Garrett's motion to suppress, allowing
in evidence the oral statements Garrett voluntarily made before the arrest but suppressing all 

evidence subsequent to the arrest. The State appeals.


DISCUSSION

 In its first two points of error, the State argues that the trial court erred in partially
granting the suppression motion because the DWI arrest was not unreasonable under the Fourth
Amendment to the United States Constitution or under Article I, Section 9 of the Texas
Constitution. See U.S. Const. amend. IV; Tex. Const. art. I, § 9. In its third point of error, the
State argues that the trial court erred in partially granting the suppression motion because the DWI
arrest did not violate Garrett's rights under chapters 14 (1) or 38 (2) of the Texas Code of Criminal
Procedure. See Tex. Code Crim. Proc. Ann. ch. 14 (West 1977 & Supp. 2000) & ch. 38 (West
1979 & Supp. 2000). In this case, we examine the reasonableness of Garrett's arrest, specifically
the existence of probable cause, in light of the totality of the circumstances. See Terry v. Ohio,
392 U.S. 1, 20 (1968); Hulit v. State, 982 S.W.2d 431, 435-36 (Tex. Crim. App. 1998). Because
this test is the same under the United States Constitution, the Texas Constitution, and the Texas
Code of Criminal Procedure, we will consider all three of appellant's points of error together. 
See Terry v. Ohio, 392 U.S. at 20; Hulit v. State, 982 S.W.2d at 435-36. We will sustain all
three of these points of error.


Probable Cause

 We review the trial court's ruling that the police officers did not have probable
cause to arrest Garrett for DWI. "Probable cause exists when the facts and circumstances within
an officer's personal knowledge and of which he has reasonably trustworthy information are
sufficient to warrant a person of reasonable caution in the belief that, more likely than not, a
particular suspect has committed an offense." Hughes v. State, 878 S.W.2d 142, 154 (Tex. Crim.
App. 1992). Probable cause must be examined in light of the totality of the circumstances
established by the evidence. See Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991).

 Since probable cause is considered a "mixed question of law and fact," the amount
of deference a reviewing court affords to a trial court's ruling on probable cause is often
determined by which judicial actor is in a better position to decide the issue. See Guzman v.
State, 955 S.W.2d 85, 87 (Tex. Crim. App. 1997). Here, the credibility of the officers is not at
issue. The trial court found both officers to be credible witnesses; (3) thus, we will accept the
testimony of both officers as accurate. We note that although both officers may have observed
different particulars of the same event, it does not follow that the officers' testimony was
inconsistent. Since this case does not turn on a question of credibility, the trial judge is not in a
better position to decide whether the totality of the circumstances justified a warrantless arrest,
and this Court may undertake a de novo review. See id. at 87-89. Thus, we look to the facts of
the case at bar to determine whether probable cause has been established.

 Several factors in this case weigh in favor of finding probable cause. First, Garrett
demonstrated unlawful and erratic driving behavior by driving through a red light and making a
sudden turn into a parking lot. Without question, the officers could legitimately stop Garrett to
investigate this traffic violation. (4) See Tex. Transp. Code Ann. § 544.007 (West 1999). Upon
investigation, Officer Sheehan noted that Garrett smelled strongly of alcohol, had watery eyes,
and was unsteady on his feet. Officer Spillers was also able to smell alcohol on Garrett, even
from six to eight feet away. The odor of alcohol, watery eyes, and unsteadiness are all classic
signs that suggest a suspect's mental and physical faculties might be impaired. See Markey v.
State, 996 S.W.2d 226, 230 (Tex. App.--Houston [14th Dist.] 1999, no pet.).

 Second, Garrett turned into a parking lot of an apartment complex where he
apparently did not reside. This suggested to the officers that Garrett had been trying to evade
arrest. Garrett admitted to the officers that he was a security officer at the University of Texas,
suggesting to the officers that he knew the law. Garrett also told the officers that he did not mean
"to disrespect them" and that they should just take him to jail. The record reflects that Garrett
went so far as to admit by implication that he had been drinking at The Lady:


A I [Sheehan] asked him how much he had to drink tonight, and he replied, "Sir,
I don't want to disrespect you." I asked him a second time, how much he had
to drink that night, and he said in quote, "See sir, I was at The Lady, that's
why I don't want to tell you, I think you should just do your job and put me
in jail."


Q Did he ever tell you how much he had to drink?


A I asked him a third time, and he replied, "I don't want to disrespect police
officers, sir, just put me in jail." 



 Finally, Garrett refused to participate in any of the usual field sobriety tests from
which the officers could have made a better assessment of Garrett's mental and physical state. 
When Spillers offered the HGN test to Garrett, Garrett turned his head to the ground and refused
to participate. (5) Garrett said, "sir, I don't mean to disrespect you, just do your job and put me in
jail." Next, Spillers demonstrated the walk-and-turn test for Garrett. This test requires the
suspect to walk from heel to toe in a straight line and turn around smoothly. See Texas Dep't of
Pub. Safety v. Rodriguez, 953 S.W.2d 362, 363 (Tex. App.--Austin 1997, no pet.). After
Spillers's demonstration, Garrett once again refused to perform the test and responded generally
that he did not mean "to disrespect" Spillers and the officer should "just go ahead and do his job." 
The one-leg-stand test was also demonstrated and, with a similar statement, Garrett again refused
to comply.

 Defendant's argument--which prevailed in the trial court--was that classic indicators
of inebriation that would be present in a normal DWI arrest were absent in this case. We note
that many of these factors, such as performance on field sobriety tests, were absent as a direct
result of defendant's conduct, i.e., his refusal to participate in any of these tests. While we regard
absent factors as a part of the totality of the circumstances, they are only a part, and where many
of the missing factors are due to a defendant's conduct, we believe that the officers could
reasonably consider that conduct as part of the totality of the circumstances. We therefore sustain
all three of the State's points of error.


CONCLUSION

 We conclude that under the totality of circumstances, the officers had probable
cause to justify a warrantless arrest of Garrett. The judgment of the trial court is reversed, and
judgment is rendered overruling the trial court's granting in part of the motion to suppress. This
cause is remanded to the trial court for further proceedings.



 
 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Reversed and Remanded

Filed: June 22, 2000

Publish

1. Chapter 14 of the Texas Code of Criminal Procedure deals with warrantless arrests. See
Tex. Code Crim. Proc. Ann. ch. 14 (West 1977 & Supp. 2000). The Texas Court of Criminal
Appeals has held that these statutory provisions require the legal equivalent of constitutional
probable cause. See Amores v. State, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991).
2. Chapter 38 of the Texas Code of Criminal Procedure deals with evidence in criminal
actions. See Tex. Code Crim. Proc. Ann. ch. 38 (West 1979 & Supp. 2000). Article 38.23 has
been found to codify the state and federal constitutional bans on the admission of evidence
obtained as a result of an illegal search or seizure. See Cooper v. State, 956 S.W.2d 95, 98 (Tex.
App.--Tyler 1997, pet. ref'd).
3. Judge Denton said specifically, "I find the officers to be credible. I find the officers'
actions given the circumstances that evening were entirely appropriate and correct . . . ."
4. Neither party questions the reasonableness of the traffic stop in this case.
5. An officer administering an HGN test looks for three factors: "(1) an inability to pursue
smoothly an object, moving sideways across the suspect's field of vision; (2) distinct, or
pronounced, nystagmus at the eye's maximum horizontal deviation; and (3) an angle of onset of
nystagmus of less than or equal to 45 degrees." Emerson v. State, 880 S.W.2d 759, 766 (Tex.
Crim. App. 1994). The HGN test "presumes that a sober person will exhibit smooth eye
movement up to a greater angle than an intoxicated person." Howard v. State, 744 S.W.2d 640,
641 (Tex. App.--Houston [14th Dist.] 1987, no pet.).


SPAN STYLE="font-family: CG Times Regular"> Finally, Garrett refused to participate in any of the usual field sobriety tests from
which the officers could have made a better assessment of Garrett's mental and physical state. 
When Spillers offered the HGN test to Garrett, Garrett turned his head to the ground and refused
to participate. (5) Garrett said, "sir, I don't mean to disrespect you, just do your job and put me in
jail." Next, Spillers demonstrated the walk-and-turn test for Garrett. This test requires the
suspect to walk from heel to toe in a straight line and turn around smoothly. See Texas Dep't of
Pub. Safety v. Rodriguez, 953 S.W.2d 362, 363 (Tex. App.--Austin 1997, no pet.). After
Spillers's demonstration, Garrett once again refused to perform the test and responded generally
that he did not mean "to disrespect" Spillers and the officer should "just go ahead and do his job." 
The one-leg-stand test was also demonstrated and, with a similar statement, Garrett again refused
to comply.

 Defendant's argument--which prevailed in the trial court--was that classic indicators
of inebriation that would be present in a normal DWI arrest were absent in this case. We note
that many of these factors, such as performance on field sobriety tests, were absent as a direct
result of defendant's conduct, i.e., his refusal to participate in any of these tests. While we regard
absent factors as a part of the totality of the circumstances, they are only a part, and where many
of the missing factors are due to a defendant's conduct, we believe that the officers could
reasonably consider that conduct as part of the totality of the circumstances. We therefore sustain
all three of the State's points of error.


CONCLUSION

 We conclude that under the totality of circumstances, the officers had probable
cause to justify a warrantless arrest of Garret