STATE V. IDUARTE

(comment: 1)

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-179-CR

THE STATE OF TEXAS STATE

V.

JORGE R. IDUARTE APPELLEE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

OPINION

------------

In this aggravated assault case, the State appeals the trial court’s order granting appellee’s motion to suppress.  We reverse and remand.

Background Facts

 Police officers Travis Eddleman and David DeLeon of the Fort Worth Police Department were dispatched to the Fossil Ridge Apartments in Fort Worth on November 22, 2001, based on a call reporting that a male and female were arguing and that gunshots had been fired.  The officers arrived at the apartment building at approximately 3:19 a.m. and saw two males and a female arguing.  The males were Jorge Iduarte, appellee, and Bacilio Leyva, appellee’s coworker, and the female was Yasamin Iduarte, appellee’s wife.  Officer Eddleman drew his weapon, held it at his side, and covered Officer DeLeon while Officer DeLeon conducted a patdown search of the two males.  Officer DeLeon had the two males get on their knees and hold their hands on top of their heads; Leyva complied immediately, but appellee took an aggressive fighting stance and had to be told several times before complying.  Officer DeLeon testified that appellee was being detained for shooting a gun in a municipality.  

The officers also determined that appellee was intoxicated.  Specifically, appellee had a hard time staying balanced, his eyes were bloodshot, his speech was slurred, and the officers could smell alcohol on his breath.  The officers believed that appellee posed a threat to himself or others due to his intoxication.  

Yasamin was crying, upset, and screaming, and appellee was agitated and angry.  Yasamin had several red marks around her neck and chest area, and she was having a hard time speaking.  When questioned, Yasamin stated that she had been assaulted, but that she did not want to talk about it.  Officer Eddleman then asked Yasamin if she knew anything about the gun shots.   Yasamin looked at appellee, then told Officer Eddleman that she “was not going to talk about that.”   

Next, Yasamin told Officer Eddleman that she wanted the keys to a truck parked at the apartment complex so she could leave.  Officer Eddleman had Yasamin get into her car because she was cold.
(footnote: 1)  According to Yasamin, there were two sets of keys to the pickup truck.  When Officer Eddleman asked appellee about the keys, appellee gave one set to him and told him that the other set was upstairs.  It was at this point that Officer Eddleman decided that he was going to arrest appellee for public intoxication.
(footnote: 2)
 After being asked about the keys, appellee began to walk towards the apartment.  When Officer Eddleman suggested, “[W]hy don’t we go get [the keys]?,” appellee stopped and said that there was no electricity.  Officer Eddleman replied, “[L]uckily, I have my flashlight.”  As appellee went up the stairs, he began to run faster.  Officer Eddleman followed him upstairs because he “felt [appellee] was possibly going to get a weapon.”  By the time Officer Eddleman caught up to him, appellee was inside the apartment standing at the dining room table with his back to the door.  Officer Eddleman testified that he entered the apartment at that point because he did not want to let appellee out of his sight due to the nature of the call, i.e. shots being fired, and he was unsure whether there were any other people in the apartment.  When Officer Eddleman shined his flashlight on appellee, appellee reached with his right hand out of Officer Eddleman’s view, held up a board used to hang keys on, and stated that he did not have Yasamin’s other keys after all.  They both left the apartment without incident.    

However, after they left the apartment, Officer Eddleman saw an empty gun holster and empty gun case outside the front door and said, “I thought you said you didn’t have a gun.”  Appellee replied, “I don’t,” and leaned down to open the gun case.  Officer Eddleman told appellee not to open the case, but appellee told Officer Eddleman that he could open it.  Officer Eddleman opened it and saw that it was empty.  Officer Eddleman again asked appellee where the gun was, and appellee became agitated.  At this point, Officer Eddleman told appellee he was arresting him for public intoxication.  Appellee began clenching his fists.  Officer Eddleman told appellee, “[Y]ou don’t want to fight; I’m not going to lose.”  Appellee shouted, “You want the gun? I will show you the gun.” 

Appellee then turned and ran back into the apartment towards the dining room table.  Officer Eddleman shined the flashlight on appellee and followed him back inside the apartment.  When Officer Eddleman was within several feet of appellee, he saw a gun in appellee’s hands and heard a hammer cocking back.  Appellee turned toward Officer Eddleman, who was now standing a few feet away, and, according to Officer Eddleman, pointed the gun at his face.  There is disputed testimony as to whether appellee picked up the gun and pointed it directly at Officer Eddleman or picked up the gun and stated that he was going to shoot himself.  Regardless, Officer Eddleman dropped to his right knee and fired twice, striking appellee two times. 

Before appellee’s aggravated assault trial, appellee filed a motion to suppress, arguing that his constitutional rights were violated because there was no probable cause to enter his apartment to obtain the keys.  After a hearing, the trial court held that the entry into appellee’s apartment was not for a community caretaking function, was not due to exigent circumstances, and was not authorized by appellee’s consent, but instead was a mere acquiescence to a showing of police authority.  Therefore, the trial court concluded that the officer’s first entry into appellee’s apartment to obtain the car keys was not a valid warrantless entry.  The trial court also concluded that the officer’s second entry circumvented the law and the constitution by creating his own exigent circumstances.  Consequently, the trial court granted appellee’s motion to suppress the evidence of his assault on Officer Eddleman, and the State filed this appeal.  
See 
Tex. Code Crim. Proc. Ann.
 art. 44.01(a)(5) (Vernon 2006).

Points on Appeal

In its first point, the State challenges the trial court’s granting of the motion to suppress on the basis that an independent crime had occurred after the alleged violation of appellee’s constitutional rights.  In its second point, the State contends that the trial court improperly held that a constitutional violation occurred when Officer Eddlemen first followed appellee into the apartment.  The State asserts that Officer Eddleman could lawfully stay with appellee at all times once he determined that there was probable cause to arrest appellee.   

Standard of Review

We review a trial court’s ruling on a motion to suppress evidence under a bifurcated standard of review.  
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  In reviewing the trial court’s decision, we do not engage in our own factual review.  
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); 
Best v. State
, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.).  The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony.  
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); 
State v. Ballard
, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999).  Therefore, we give almost total deference to the trial court’s rulings on (1) questions of historical fact, even if the trial court’s determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor.  
Montanez v. State
, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); 
Johnson v. State
, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002); 
State v. Ballman
, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref’d).  But when the trial court’s rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court’s rulings on mixed questions of law and fact.  
Estrada v. State
, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); 
Johnson
, 68 S.W.3d at 652-53.

Stated another way, when reviewing the trial court’s ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court’s ruling.  
State v. Kelly
, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006).  When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court’s ruling, supports those fact findings.  
Id
. at 818-19.  We then review the trial court’s legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling.  
Id
. at 819.

We must uphold the trial court’s ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling.  
Armendariz v. State
, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003), 
cert. denied
, 541 U.S. 974 (2004); 
Ross
, 32 S.W.3d at 856; 
Romero
, 800 S.W.2d at 543.  

The Fourth Amendment protects against unreasonable searches and seizures.  U.S. 
Const
. amend. IV.  To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct.  
Torres v. State
, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); 
Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).  A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant.  
Torres
, 182 S.W.3d at 902; 
Ford
, 158 S.W.3d at 492.  Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the search or seizure was conducted pursuant to a warrant or was reasonable.  
Torres
, 182 S.W.3d at 902; 
Ford
, 158 S.W.3d at 492.

Whether a search is reasonable is a question of law that we review de novo.
  Kothe v. State
, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004).  Reasonableness is measured by examining the totality of the circumstances.  
Id
. at 63.  It requires a balancing of the public interest and the individual’s right to be free from arbitrary detentions and intrusions.  
Id
.  A search conducted without a warrant is per se unreasonable unless it falls within one of the “specifically defined and well-established” exceptions to the warrant requirement.  
McGee v. State
, 105 S.W.3d 609, 615 (Tex. Crim. App.), 
cert. denied
, 540 U.S. 1004 (2003); 
see
 
Best
, 118 S.W.3d at 862.  

Discussion

In its first point, the State contends that the trial court erred by suppressing evidence that appellee committed aggravated assault by pointing a pistol at Officer Eddleman because this was a “new crime” that was committed after Officer Eddleman allegedly violated appellee’s constitutional rights.  Here, the trial court made extensive and detailed written findings of fact which we take as true unless unsupported by the evidence. 
 Kelly
, 204 S.W.3d at 818.  Because the first issue raised by the State is a legal issue, we will take all these findings as true and only review the trial court’s conclusions of law de novo.  
Id
.  

When Officer Eddleman and appellee left the apartment after looking for the truck keys, Officer Eddleman saw an empty gun holster and gun case on the exterior staircase.  Officer Eddleman stated, “I thought you said you didn’t have a gun,” and appellee responded that he did not have one and leaned down to open the case.  Officer Eddleman told him not to, and appellee then said that the officer could; the case was empty.  Officer Eddleman next asked appellee where the gun was, and appellee became agitated. 

At that point, Officer Eddleman told appellee that he was arresting him for public intoxication, and appellee clenched his fists.  This drew Officer DeLeon’s attention, and he began walking up the steps.  When Officer Eddleman warned appellee that he should not attempt to fight, appellee shouted, “You want the gun? I will show you the gun.”  Appellee then turned and ran back into the apartment towards the dining room table, and Officer Eddleman followed him inside, pointing his flashlight at appellee.
(footnote: 3)  When Officer Eddleman was within a few feet of appellee, appellee raised the .357 revolver, cocked the hammer, and either pointed it at Officer Eddleman’s face or stated that he was going to shoot himself.  Officer Eddleman dropped to one knee and shot appellee two times.

At the suppression hearing, the trial court concluded that the officers had probable cause to arrest appellee for public intoxication.  However, according to the trial court, by not arresting appellee before entering the apartment, “the officers were trying to create a circumstance where they could create exigent circumstances.”  Because of this initial illegal entry, the trial court suppressed all of the testimony of appellee’s alleged aggravated assault on Officer Eddleman.  

Under the Texas exclusionary rule, evidence obtained in violation of state or federal law may not be admitted against the accused in a criminal case. 
Tex. Code Crim. Proc. Ann.
 art. 38.23 (Vernon 2005).  The phrase “obtained in violation of the law” contemplates that a crime has been committed, that evidence of a crime exists, and that the officer violated the law by attempting to obtain evidence of the previously committed crime.  
State v. Mayorga
, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995) (plurality opinion)
(footnote: 4); 
Donoho v. State,
 39 S.W.3d 324, 327 (Tex. App.—Fort Worth 2001, pet. ref’d); 
Cooper v. State
, 956 S.W.2d 95, 98 (Tex. App.—Tyler 1997, pet. ref’d).  Thus, the evidence that must be excluded under article 38.23 is evidence of the crime that was committed before the officer’s unlawful search or seizure, not evidence of a crime that was committed thereafter.  
See Mayorga
, 901 S.W.2d at 946; 
Donoho
, 39 S.W.3d at 327 (holding that because appellant committed the aggravated assault after his warrantless arrest, evidence of the assault was not obtained in “violation of the law”); 
Cooper
, 956 S.W.2d at 98 (holding that the evidence of aggravated assault on a peace officer did not exist at the time the lawful or unlawful arrest was attempted, and that the alleged illegality of the arrest was irrelevant to the crime of aggravated assault).  Article 38.23 does not require the exclusion of evidence of a crime that occurred after the officer’s unlawful search or seizure.  
See Martinez
, 91 S.W.3d at 340 (“That theory is not the law.”).

Here, giving complete deference to the trial court’s credibility determinations and findings of fact, it is clear that appellee’s alleged aggravated assault against Officer Eddleman took place after the officer’s alleged improper conduct had occurred.  Indeed, Officer Eddleman had already left appellee’s apartment when he noticed the empty gun case on the landing outside the apartment and asked appellee about it.  The record is unclear when, if ever, Officer Eddleman first asked appellee about the gun, but when the officer continued to question him about it, appellee became visibly angry.  Then, when Officer Eddleman told appellee that he was under arrest for public intoxication, appellee clenched his fists and shouted, “You want the gun?  I will show you the gun.”  This heated exchange, combined with the prior call Officer Eddleman received regarding 
the argument between the male and female and 
the gunshots being fired, appellee’s aggression when the officers initially arrived at the apartment complex, Yasamin’s admission that she had been assaulted and her non-verbal responses to questions about the gunshots, coupled with the presence of the empty gun case outside appellee’s apartment, gave Officer Eddleman reasonable suspicion to believe that appellee had a gun, had likely fired the missing gun, and now had gone inside to retrieve it.
(footnote: 5)  
See Ford v. State
, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (holding that reasonable suspicion exists if the officer has specific, articulable facts which, when combined with rational inference from those facts, would lead him to reasonably concluded that a particular person has engaged in criminal activity).  This reasonable suspicion of criminal activity, coupled with the need for officer safety, gave Officer Eddleman justification to follow appellee into the unlighted apartment when he ran inside.  
See Cardenas v. State
, 115 S.W.3d 54, 61-62 (Tex. App.—San Antonio 2003, no pet.) (holding that an officer may follow a suspect when the officer can articulate reasons why the he must do so for officer safety).

Additionally, appellee ran away from Officer Eddleman and into the unlighted apartment 
after 
Officer Eddleman told him that he was arresting him for public intoxication.  Officer Eddlemen certainly had the right, if not the duty, to follow appellee back into the apartment to apprehend him.
(footnote: 6)  
See
 
Tex. Code Crim. Proc. Ann.
 art. 15.24 (Vernon 2005); 
Tex. Penal Code Ann.
 § 9.51 (Vernon 2003); 
Manzi v. State
, 56 S.W.3d 710, 717 (Tex. App.—Houston [14th Dist.] 2001, 
aff’d
, 88 S.W.3d 240 (Tex. Crim. App. 2002).  

Thus, even if Officer Eddleman’s first entry into the apartment was illegal, his second entry was legal, and evidence of the alleged assault that occurred after the unlawful entry was not obtained in violation of the law.
(footnote: 7) 
 See
 
Donoho
, 39 S.W.3d at 327; 
Cooper
, 956 S.W.2d at 98.  Because evidence of appellee’s aggravated assault was a separate and new crime distinct from the alleged unlawful entry, the testimony regarding the assault should not be suppressed under the exclusionary rule, and the trial court erred by excluding it.  
See Mayorga
, 901 S.W.2d at 946
; Donoho
, 39 S.W.3d at 327; 
Cooper
, 956 S.W.2d at 98.  Accordingly, we sustain the State’s first point.

Because our ruling regarding the State’s first point disposes of the appeal, we do not reach the State’s second point.  
See 
Tex. R. App. P.
 47.1 (providing that appellate courts need only address issues that are “necessary to final disposition of the appeal”); 
Freeman v. State
, 985 S.W.2d 588, 590 (Tex. App.—Beaumont 1999, pet. ref’d) (same).

Conclusion

Having sustained the State’s first point, we reverse the trial court’s order granting the motion to suppress and remand the case to the trial court for further proceedings consistent with this opinion. 

TERRIE LIVINGSTON

JUSTICE

PANEL A: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: April 26, 2007 

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-06-179-CR

THE STATE OF TEXAS STATE

V.

JORGE R. IDUARTE APPELLEE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

DISSENTING OPINION

------------

I must respectfully dissent from the majority opinion, which substitutes its own findings of fact and determinations of credibility for those of the trial court.

The trial court went to great lengths to provide this court with both oral and written findings of fact and conclusions of law.  The trial court reminded us that

[i]n a suppression hearing, 
the trial court is the sole trier of fact and judge of the credibility of the witnesses
 and the weight to be given their testimony.  
Maxwell v. State
, 73 S.W.3d 278, 281 (Tex. Crim. App. [), 
cert. denied
, 537 U.S. 1051 (2002);] 
Romero v. State
, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990).  The trial court may accept or reject any or all of any witness’s testimony.  
Alvarado v. State
, 853 S.W.2d 17, 23 (Tex. Crim. App. 1993)[;] 
Allridge v. State
, 850 S.W.2d 471, 492 (Tex. Crim. App. 1991), 
cert. denied
, 510 U.S. 831 . . . (1993)
.  
The trial court resolves all conflicts in the testimony.  
Hawkins v. State
, 853 S.W.2d 598, 600 (Tex. App.—Amarillo 1993, no pet.)
.

The trial court made clear to us that “[t]his case boils down to the credibility of Officer Eddleman” and that the trial court did not believe his testimony.  The trial court found that “Officer Eddleman intended to go into the Defendant’s apartment, with or without his permission.”  The trial court concluded that Officer Eddleman’s entry into the apartment was not supported as a search incident to arrest, was not supported by consent, was not for a community caretaking function, and was not pursuant to exigent circumstances.  Contrary to the majority’s contention that Appellee unilaterally stood up and began walking back to the apartment, the trial court concluded that Appellee “merely acquiesced to the officer’s show of authority.”
(footnote: 1)  We are bound by the trial court’s determination of this fact.

The evidence before the trial court shows that someone called the police to report that shots had been fired.  Before the police illegally entered his home, Appellee was downstairs in the courtyard, on his knees, with his hands on top of his head.  Both Officer Eddleman and Officer DeLeon had their weapons drawn.  Officer DeLeon searched Appellee and the man with him, who was also on his knees, and found no weapons.  Officer Eddleman had already decided to arrest Appellee for public intoxication at that point.

Officer Eddleman told Appellee to go upstairs to his apartment ostensibly to get his estranged wife an extra set of keys to the pickup after he had already handed over the set in his pants pocket, but the trial court concluded that “it was clear his intentions were to look for a weapon.”  When Appellee responded that he could not go into the apartment because the electricity was off, Officer Eddleman insisted, stating that he had a flashlight.  After hearing the evidence, the trial court concluded that “Officer Eddleman intended to go into [Appellee’s] apartment, with or without his permission.”

The trial court also noted that Officer Eddleman claimed on one hand that Appellee was so intoxicated that he “was having a hard time keeping a steady balance.  Officer Eddleman also observed bloodshot eyes, slurred speech, and smelled an odor of an alcoholic beverage on his breath.”  But  when Officer Eddleman told him to go back to his apartment, Appellee, according to both officers, “began to run up the stairs,” and Officer Eddleman testified that he “could not keep up with him,” despite Officer Eddleman’s observation made, at most, minutes earlier that Appellee was unable keep a steady balance.

The trial court also concluded,

It defies common sense that if you have probable cause to arrest an individual for public intoxication, you allow that individual, knowing there has been a report of assault and gunshots fired, [you] allow that individual (who has already taken an aggressive stance toward officers) to roam, unhandcuffed, back into his unlighted, dark apartment where you suspect a weapon is located, to retrieve some keys which were not necessary to either Mrs. Iduarte being able to leave the scene safely or for any other purpose.

. . . .

. . . .  To me, the question is if there is probable cause to arrest the defendant for public intoxication, which is at any point before the second entry into the apartment.  It’s pretty clear from the evidence that’s all they would have had probable cause to arrest him for.  If there is that probable cause and they were going to effect an arrest, then obviously the logical way to handle that would have been to do that at the bottom of the stairs on the curb where the two people were standing together with the officers.  By them not doing that, it seems to me that the officers were trying to create a circumstance where they could create exigent circumstances. . . . 

. . . .  

. . . .  That’s like saying, okay, I have probable cause to arrest you for possession of a controlled substance, go in the house and get the controlled substance.  Oh, wait, now I have exigent circumstances to go in there because he might destroy the evidence.

The trial court also pointed out the discrepancies between Officer Eddleman’s version of the events and Officer DeLeon’s.  Officer Eddleman claimed that Appellee cocked the hammer and pointed the firearm directly at him.  Officer Eddleman dropped to his knee and shot two bullets into Appellee. Officer DeLeon, in contrast, testified that Appellee reached “on the kitchen table” and said something to the effect of, “Here is the gun, I am going to shoot myself.”  Officer DeLeon did not testify that Appellee cocked the hammer.  The trial court found that Officer DeLeon testified that Appellee picked up the gun, but this finding is not supported by the record.  The trial court made clear its finding that Officer Eddleman was not a credible witness. 

In order to conduct a warrantless search of someone’s home absent consent,
(footnote: 2) the officer must have both probable cause and exigent circumstances.
(footnote: 3)
 In 
Johnson v. United States
, the Supreme Court of the United States noted that the strong odor of burning opium emanating from a closed hotel room might well establish probable cause to believe that someone behind the door was committing a criminal offense, but “the arresting officer did not have probable cause to arrest petitioner until he had entered her room and found her to be the sole occupant.”
(footnote: 4)  The problem in 
Johnson
 was not the lack of probable cause, but the failure to obtain a search warrant because there were no exigent circumstances.  The Court explained,

No reason is offered for not obtaining a search warrant except the inconvenience to the officers and some slight delay necessary to prepare papers and present the evidence to a magistrate. . . .  No suspect was fleeing or likely to take flight.  The search was of permanent premises, not of a movable vehicle.  No evidence or contraband was threatened with removal or destruction, except perhaps the fumes which we suppose in time will disappear.
(footnote: 5)

As the Texas Court of Criminal Appeals noted in explaining the rationale behind the 
Johnson
 decision,

Until the officers, who already had probable cause, knocked on her door, the defendant was blissfully unaware of any police presence and was thus unlikely to flee or dispose of the contraband during the time the officers obtained a search warrant.  It is precisely from the 
Johnson
 scenario that the rule that “police may not create their own exigency” to make a warrantless arrest or search was born.  
See
 [
Johnson
, 33 U.S.] at 16-17, 68 S. Ct. [at 370] (concluding that “the Government is obliged to justify the arrest by the search and at the same time justify the search by the arrest.  This will not do.  An officer gaining access to private living quarters under color of his office and of the law which he personifies must then have some valid basis in law for the intrusion.").  Thus, exigent circumstances “do not meet Fourth Amendment standards if the government deliberately creates them.”  
United States v. Coles
, 437 F.3d 361, 366 (3d Cir. 2006) (discussing and following 
Johnson
, collecting cases dealing with the question of whether police officers have deliberately created their own exigency to justify a warrantless arrest inside a private home or hotel room); 
compare United States v. Munoz-Guerra
, 788 F.2d 295, 298 (5th Cir. 1986) (officers, who had probable cause to obtain a search warrant, created their own exigency because they knew that their “knock and talk” investigative strategy would require a warrantless entry),
 with
 
United States v. Jones
, 239 F.3d 716, 720 (5th Cir. 2001) (officers who conducted “knock and talk” to investigate complaints of criminal activity and identify inhabitants did not create their own exigency when they saw firearm in plain view through open apartment door; police did not observe any criminal activity before approaching apartment and did not know occupants were armed until they were directly in front of open door), [
cert. denied
, 534 U.S. 861 (2001)].  Under the Fourth Amendment, courts “look to the reasonableness and propriety of the actions and investigative tactics of the police which precede the exigency relied upon to justify warrantless entry.”  
Coles
, 437 F.3d at 368.  “The presence of exigent circumstances is a finding of fact,” which appellate courts review only for clear error or abuse of discretion.  
Id.
 at 366.
(footnote: 6)  

The majority appears to dwell on the issue of reasonable suspicion to believe that there was a gun in the apartment.  That is not the issue here.  Instead, the relevant inquiry is whether Officer Eddleman should have created exigent circumstances to justify his warrantless entries into the apartment or whether he should have sought a warrant.  If the presence of exigent circumstances is a finding of fact that appellate courts review only for clear error or abuse of discretion, as the 
Coles
 court held and the 
Parker
 court adopted,
(footnote: 7) then the creation of exigent circumstances is a finding of fact that we cannot set aside absent clear error or an abuse of discretion.

In the case now before this court, Officer Eddleman claimed that he had probable cause to arrest Appellee for public intoxication before going into the apartment.  Although the trial court clearly stated that its granting of Appellee’s motion to suppress turned on the credibility of the witnesses, and although the trial court made it clear that Officer Eddleman was not credible, the majority relies exclusively on Officer Eddleman’s testimony in overturning the trial court’s determination of the facts and the trial court’s application of the law to those facts. 

As the trial court concluded, Officer Eddleman was determined to go into Appellant’s apartment to search for a firearm because there had been a report of gunshots.  The majority emphasizes that “appellee’s alleged aggravated assault against Officer Eddleman took place after the officer’s alleged improper conduct had occurred.”
(footnote: 8)  Hence, the majority somehow concludes that the illegal entry into Appellee’s apartment did not require suppression of the evidence obtained after the illegal entry because “Article 38.23 does not require the exclusion of evidence of a crime that occurred after the officer’s unlawful search or seizure.”
(footnote: 9)  In so holding, the majority takes as true all of Officer Eddleman’s testimony, including that contradicted by Officer DeLeon.

Respectfully, the record is clear that the offense that Officer Eddleman was determined to investigate and the offense that required entry into Appellee’s apartment was discharging a firearm, either alone or as part of an assault.  That offense was complete before Officer Eddleman arrived on the scene.  Only Officer Eddleman testified that Appellee pointed a firearm at him.  This was not Officer DeLeon’s testimony.  The trial court pointed out the discrepancy in the two officers’ testimony.  Nor did the trial court accept Officer Eddleman’s testimony that suggested that Appellee had denied having a firearm.  Indeed, the trial court’s Finding of Fact 42 states,

Officer Eddleman confronts the Defendant and says, “I thought you said you didn’t have a gun.”  (There was not any testimony that Officer Eddleman had ever asked the Defendant if he had a gun prior to this point).

A new offense was committed by Appellee after Officer Eddleman’s entry into Appellee’s apartment only if Officer Eddleman was telling the truth and Officer DeLeon was not.  The trial court did not find Officer Eddleman to be a credible witness.  The majority, however, makes its own determination of Officer Eddleman’s credibility by assuming that he, and not Officer DeLeon, told the truth about where Appellee pointed the gun and whether he cocked the hammer.

The trial court held that both warrantless entries were unlawful.  A warrantless entry requires either consent or probable cause and exigent circumstances.  A police officer may not create exigent circumstances to avoid the warrant requirement.  The trial court found that Officer Eddleman had created the exigent circumstance to justify the second warrantless entry and that the first entry was also unlawful because there was neither consent nor exigent circumstances.  

The majority relies on three cases involving resisting arrest or aggravated assault of a police officer during an arrest to conclude that the evidence in the case before us should not be suppressed.
(footnote: 10)  Unlike the evidence of the charged
 
offenses in those three cases, however, the evidence sought by Officer Eddleman when he illegally entered Appellee’s apartment both times was the gun—the gun that was allegedly used to fire the shots triggering the 911 call, the gun Officer Eddleman questioned Appellee about, and the same gun that Officer Eddleman claimed that Appellee later pointed at him.  Consequently, even if evidence of the purported simple assault were admissible under 
Mayorga
 as being evidence only of the new crime,
(footnote: 11) the gun, as the object of both the initial investigation and Officer Edlleman’s illegal acts, was not.
(footnote: 12)   The gun was evidence that existed before the illegal entries and was the sole reason for the illegal entries. 

The trial court had the opportunity to view the witnesses, listen to their testimony, and determine their credibility.  The trial court made clear that the ruling on the motion to suppress was based on the trial court’s determination of the witnesses’ credibility.  Because the majority substitutes its determination of credibility for that of the trial court, I must respectfully dissent. 

LEE ANN DAUPHINOT

JUSTICE

PUBLISH

DELIVERED: April 26, 2007

FOOTNOTES
1:
There were two vehicles at the scene.  Yasamin was sitting in her own car while Officer Eddleman went to get the keys for the pickup truck that was also at the apartment complex. 

2:
There is nothing in the record indicating that, at this point, Officer Eddleman informed appellee that he was under arrest.   

3:
Although the trial court found that Officer Eddleman’s credibility was lacking, no evidence or testimony presented at the suppression hearing contradicted his version of the incident from when he emerged from the apartment the first time until he stepped into appellee’s apartment the second time.  

4:
Although 
Mayorga 
is a plurality opinion and therefore is not binding precedent, the court of criminal appeals has cited it with approval and stated that it may be cited for its reasoning.  
See Martinez v. State
, 91 S.W.3d 331, 340 & nn.34-35 (Tex. Crim. App. 2002).  

5:
The dissent mistakenly asserts that we have substituted our own findings of fact and determinations of credibility for those of the trial court.  On the contrary, the findings of fact made by the trial court at the suppression hearing were largely based on uncontested testimony.  The only significant dispute still unanswered is whether appellee pointed the gun at Officer Eddleman or at himself, and that is an issue that we leave to the fact finders’ determination at the trial on the merits. Despite the dissent’s contentions, we have accepted the trial court’s finding of fact that Officer Eddleman was not a credible witness.  However, we do not accept the trial court’s conclusion of law that Officer Eddleman’s second entry into the apartment was illegal.     

6:
The dissent also claims that Officer Eddleman created an exigent circumstance to enter appellee’s apartment.  The dissent claims that Officer Eddleman “told Appellee to go upstairs to his apartment . . . .”  
See 
Dissenting Op. at 3.  However, the reporter’s record and the trial court’s findings of fact do not state this; the record and findings of fact show that when Officer Eddleman asked appellant about the second set of keys, appellant unilaterally stood up and began walking back to the apartment.  The dissent also completely ignores Officer Eddleman’s uncontroverted sighting of the empty gun case and appellee’s disturbing reactions 
after 
the initial alleged illegal search had concluded, when the two men were out on the landing.  

7:
The dissent points out the discrepancies between Officer Eddleman’s and Officer DeLeon’s version of events.  These discrepancies, while relevant when considering Officer Eddleman’s credibility, do not create a factual dispute for this suppression issue.  Indeed, the officers’ testimonies do not conflict over either of Officer Eddleman’s two entries into the apartment.  Instead, they conflict on whether or not the actual alleged assault occurred, and the conflict on that issue should be reconciled at the trial on the merits.    

1:
See
 Maj. Op. at 13, n.5.

2:
Schneckloth v. Bustamonte
, 412 U.S. 218, 222, 93 S. Ct. 2041, 2045 (1973).

3:
Payton v. New York
, 445 U.S. 573, 587-88, 100 S. Ct. 1371, 1380-81 (1980).

4:
Johnson v. United States, 
333 U.S. 10, 16
, 68 S. Ct. at 367, 370 (1948). 

5:
Id. 
at 15, 68 S. Ct. at
 369.

6:
Parker v. State, 
206 S.W.3d 593, 598 n.21 (Tex. Crim. App. 2006).

7:
Id.; see also
 
Coles
, 437 F.3d at 366.

8:
See
 Maj. Op. at 12.

9:
See id
.

10:
See
 Maj. Op. at 11-12 (relying on 
State v. Mayorga
, 901 S.W.2d 943, 946 (Tex. Crim. App. 1995) (plurality opinion); 
Donoho v. State
, 39 S.W.3d 324, 327 (Tex. App—Fort Worth 2001, pet. ref’d); and
 Cooper v. State
, 956 S.W.2d 95, 98 (Tex. App.—Tyler 1997, pet. ref’d)). 

11:
See Mayorga
, 901 S.W.2d at 946. 

12:
See id.

COMMENTS AND ANNOTATIONS
Comment 1:
Majority opinion by Justice Livingston

Dissenting opinion by Justice Dauphinot