**Lindon TUCKER, Appellant,**

v.

**The STATE of Texas, Appellee.**

**Nos. 13–01–623–CR, 13–01–624–CR.**

Court of Appeals of Texas,
Corpus Christi Edinburg.

Aug. 21, 2003.

W.A. Orr, Jr., Bay City, for appellant.

Robinson C. Ramsey, Soules & Wallace, P.C., San Antonio, Steven E. Reis, District Attorney, Bay City, for the State.

Before Chief Justice VALDEZ and Justices RODRIGUEZ and DORSEY.[1]

## OPINION

Opinion by Justice DORSEY.

Appellant, Lindon Tucker, was convicted in two cases of assault on a public servant and sentenced to nine years imprisonment and a $2,500 fine for each. The two cases were tried together because they arose from the same incident, and two Matagorda County Deputy Sheriffs, Robert L. Hearn and David Worthey, were the victims.

The deputies were dispatched to the appellant's rural home to investigate a domestic disturbance between Alden and Gina Orr around 6 a.m. on January 6, 2001. Appellant, the Orrs, and three others had been together partying and drinking well into the early morning hours. While the deputies were interviewing the Orrs separately from one another, Tucker volunteered his advice as to whom the officers should arrest. Tucker was told by the deputies to stop interfering with the investigation, to go inside his home, and to close his front door. Tucker persisted in advising the officers and they announced he was under arrest and grabbed his wrists. Tucker quickly retreated into his home pulling the deputies with him. A struggle ensued, resulting in blows being struck, the deputies being squirted in the face with their pepper spray, and Tucker being shot, at which he shouted, "I've been shot; call my lawyer."

Appellant brings several grounds of error: failure to grant a new trial because of juror disqualification and misconduct, insufficiency of the evidence, both factual and legal, and that the detention and arrest of appellant "was an unlawful exercise of police authority and violated his right to due process of law."

### I. The Problem with the Juror.

During voir dire the potential jurors were asked if they knew any of the law enforcement officers who would probably be witnesses in the trial, including the victims, Deputies Hearn and Worthy. Several persons on the panel stated that they did know certain law enforcement witnesses, but one juror, Joseph Sepulveda, did not respond, indicating he was not acquainted with any. Mr. Sepulveda was selected on the jury and became its foreman.

After the jury was sworn, but before testimony began, the district attorney, Steven Reis, approached the bench and had a brief discussion with the judge, the Honorable Oliver S. Kitzman, assigned judge. The judge, after excusing the jury until the next morning, announced that he had been informed that one of the jurors, Mr. Sepulveda, had more than ordinary knowledge of the case, and an inquiry was necessitated. Apparently Mr. Sepulveda

1. Retired Justice J. Bonner Dorsey assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

worked with Deputy Worthy's wife, Patricia Worthey, and there was some concern that the case had been discussed at their place of employment.

The judge discussed this matter with Sepulveda, initially stating that perhaps Sepulveda may have heard something about the case from working with someone who is close to this case. The judge asked Mr. Sepulveda what he knew about the case, and Mr. Sepulveda responded that all he had heard were rumors "not through that individual." The court asked if he had a direct conversation with a fellow employee about the case, and Mr. Sepulveda said "no". The judge then asked if he could be fair and impartial to both sides, and Mr. Sepulveda said "yes".

Defense counsel asked the juror if he had a conversation with Mrs. Worthy about the case, and he responded that he had not. The juror then said there was a conversation going on in a cubicle at work about the case, but he did not have time to listen. When asked if he knew anything about the case, he responded that he knew nothing other than what he had heard during voir dire the previous day and what he had read in the newspapers a long time ago, but he did not associate it with this case.

The court asked if either side considered it appropriate to make any further inquiry, and appellant's counsel replied no, but expressed concern that if it developed later that there was indeed a conversation between Sepulveda and the wife of Deputy Worthy, there would be problems. The judge stated that "we will all be alert to that possibility" and observed that "the juror speaks convincingly of what he's said." No motions were made to disqualify the juror and the trial proceeded. The jury returned verdicts of guilty in both cases.

A motion for new trial was filed and a hearing held before the Honorable Craig Estlinbaum, judge of the 130th District Court of Matagorda County. At that hearing, Patricia Worthey, the wife of Deputy Worthey, testified that Joseph Sepulveda works where she does and at one time was her supervisor. After the scuffle between appellant and Deputies Worthey and Hearn, Mrs. Worthey talked about it with her co-workers, and stated that Mr. Sepulveda was nearby but did not participate in the conversation. At the end of the conversation Mr. Sepulveda asked if Deputy Worthey and appellant Tucker were all right. Mrs. Worthey testified that Mr. Sepulveda did not know Deputy Worthey, but knew that he was her husband.

Mr. Sepulveda testified that he does not know Deputy Worthey, but knows his wife, because he was her supervisor at work. He overheard a conversation between her and other employees about the incident. He knew her husband was in law enforcement. During questioning in voir dire as to whether he knew Deputy Worthey, he stated he had answered truthfully, because he did not know him, and did not make the connection between Deputy Worthey and Patricia Worthey until later. When the judge questioned him before the trial started but after the jury was chosen, he realized they were married.

Judge Estlinbaum denied appellant's motion for new trial.

Appellant claims error in the trial court's denial of the motion for new trial arguing (1) had he known that Juror Sepulveda had engaged in conversation with Deputy Worthy's wife inquiring about his condition, he would have struck the juror, and (2) Juror Sepulveda was disqualified as a matter of law.

■ Article 35.16 of the Texas Code of Criminal Procedure states the grounds on

which a prospective juror may be challenged for cause, and article 35.19 commands that a potential juror who has certain disqualifications is ineligible to serve, regardless of the consent of the parties. *See* Tex.Code Crim. Proc. Ann. art. 35.16 (Vernon Supp.2003); Tex.Code Crim. Proc. Ann. art. 35.19 (Vernon 1989). A prospective juror is absolutely disqualified if he has been convicted of, or is under accusation or indictment for theft or any felony, or if he is insane. Id. art. 35.19. The evidence reveals no hint that Juror Sepulveda fell within any of these categories. Therefore, he was not disqualified from serving on the jury as a matter of law.

■ The only objection made by appellant to Mr. Sepulveda sitting on the jury was made at the hearing on the motion for new trial. We review the trial court's denial of a motion for new trial by the standard of abuse of discretion; i.e., whether the court acted according to guiding principles of law, or whether the decision was wholly arbitrary or unreasonable. *Salazar v. State*, 38 S.W.3d 141, 147–148 (Tex.Crim.App.2001); *State v. Trevino*, 930 S.W.2d 713, 715 (Tex.App.-Corpus Christi 1996, pet. ref'd); *see* Tex.R.App. P. 33.1.

The evidence at the hearing was that Juror Sepulveda answered questions at voir dire and at the subsequent hearing honestly. There was no evidence he knew Deputy Worthey, although he knew that his employee was married to him. We hold the trial court did not abuse its discretion in overruling the motion for new trial. The point of error is overruled.

## II. Sufficiency of the Evidence.

Appellant was charged and convicted of assault on a public servant while the public servant was lawfully discharging an official duty. Tex. Pen.Code Ann. § 22.01(b)(1) (Vernon 2003). The indictment alleged the official duty the officer was discharging was attempting to arrest appellant for interference with public duties of a peace officer. Tex. Pen.Code Ann. § 38.15(a)(1) (Vernon 2003).

■ In his first ground of error appellant challenges the legal sufficiency of the evidence to support the conviction. In reviewing the legal sufficiency of the evidence we view the evidence in the light most favorable to the verdict, asking whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

Although the events leading to the conviction have been generally told, it is necessary to relate in some detail the assaults themselves. When the deputies arrived at appellant's home, they were met in the driveway by Mrs. Orr. One deputy talked to her in the yard, and the other deputy went onto the porch of the trailer house to talk to Mr. Orr, who was inside. Mr. Orr went outside to talk to the deputy, and appellant was in the front door of his home telling the deputy to arrest her if they arrested Mr. Orr. Deputy Worthey told appellant that they would handle it, and shut the door, leaving appellant inside. Appellant continued to tell the deputies that they should arrest Mrs. Orr, repeating his instructions as many as seven or eight times. The officers told appellant repeatedly that they would conduct their interviews and to "stay out of it" and get back in his house and shut the door. They finally told him if he didn't stop interfering they would arrest him. When he gave them his final bit of advice, both officers walked up the steps, approached appellant in the doorway of his house, told him he was under arrest, and grabbed his wrists to put handcuffs on him.

Appellant protested, as he had earlier, that he was in his own house, and he fell backward to the floor, bringing the officers into the house with Deputy Worthey falling on top of appellant. The two deputies struggled with appellant on his back with Deputy Worthey on top of him and Deputy Hearn trying to help. Blows and kicks were struck by appellant and the officers. The three ended up in a bathroom so small that Deputy Hearn couldn't participate more than hitting appellant once in the face and putting his foot on his neck or head. Deputy Worthey testified that appellant struck him several times in the head with his fist, and he felt he was getting the worst of the fight. He decided to use his pepper spray. He retrieved it from his belt, shouted "pepper spray", and tried to squirt it into appellant's eyes. Worthey lost control of the spray to appellant, and was himself squirted in the eyes, resulting in his immediate blindness and severe discomfort. Worthey said all he could do was cover up to protect himself, feeling he was totally defenseless. He got to his knees or feet, pulled his pistol, and shot once blindly in appellant's direction, striking him. Appellant shouted, "I've been shot; call my lawyer."

Deputy Worthey testified he was hit repeatedly by appellant with his fist and sprayed with pepper spray. Deputy Hearn testified he was kicked by appellant and was also sprayed with pepper spray.

The statute involved, section 22.01(b)(1)[2] of the penal code, requires that at the time of the assault, the officers be lawfully discharging an official duty, stated in the indictment and charge, as attempting to arrest appellant for the crime of interfering with the performance of their public duties. Appellant argues that the officers were not lawfully discharging an official duty because his attempted arrest was unlawful. The deputies were attempting to arrest appellant for violating section 35.15(a), interfering with their performance of official duties; however, subsection (d) of section 38.15 provides that it is a defense to prosecution if the interference consists of speech only. TEX. PEN.CODE ANN. § 38.15(d). The evidence is unequivocal that appellant only spoke to the deputies, telling them repeatedly in essence that if they arrested Mr. Orr, they needed to arrest Mrs. Orr also. Those spoken words were appellant's sole interference with the officers' investigation of the domestic disturbance. Appellant argues that he had not committed an offense of interfering with the officers, and thus their attempt to arrest him was not "lawfully discharging an official duty" as required to constitute an assault on a public servant. TEX. PEN.CODE ANN. § 22.01(b)(1).

The State responds that the validity of the arrest does not constitute a defense to the crime of resisting arrest. *State v. Mayorga*, 901 S.W.2d 943, 945 (Tex.Crim. App.1995); *Barnett v. State*, 615 S.W.2d 220, 223 (Tex.Crim.App.1981); *see* TEX. PEN.CODE ANN. § 38.03(b) ("It is no defense to prosecution under this section that the arrest or search was unlawful."). Accordingly, argues the State, appellant may not resist his arrest, regardless of its legality. However, appellant was not charged and convicted of resisting arrest so the statutory provision pertaining to that crime is not applicable. There is no similar provision in the statutes that relate to interference

---

**2.** "Section 22.01. Assault. (a) A person commits an offense if the person: (1) intentionally, knowingly, or recklessly causes bodily injury to another .... (b) An offense under Subsection (a)(1) is a Class A misdemeanor, except that the offense is a felony of the third degree if the offense is committed against: (1) a person the actor knows is a public servant while the public servant is lawfully discharging an official duty...."

with a public servant.[3] The State chose not to charge appellant with resisting arrest, an offense carrying a lesser penalty than the offense charged, assault on a public officer. The statutory proviso is inapplicable.

■ However, regardless of the statute, identical policy concerns are implicated. In addressing the legislature's abolition of the common law right to resist an unlawful arrest, the Texas Court of Criminal Appeals stated, "This reflects a growing realization that the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned." *Ford v. State*, 538 S.W.2d 633, 635 (Tex.Crim.App.1976) (quoted in *State v. Mayorga*, 901 S.W.2d 943, 945 (Tex.Crim.App.1995)). The Texas Court of Criminal Appeals held in *Craig v. State*, 594 S.W.2d 91 (Tex.Crim.App.1980) that the fact that the arrest is not illegal is not a defense to assault on a public servant in the lawful discharge of his duties. *Id.* at 94. Similarly, in *Gonzalez v. State*, 574 S.W.2d 135 (Tex.Crim.App.1978) the court stated, "Regardless of whether the appellant's arrest was lawful or unlawful, the deputy constable was in the lawful discharge of his duty when he attempted to arrest appellant." *Id.* at 137. Several courts of appeal have also held that it is not a defense to assaulting a public servant in the lawful discharge of his official duties that the arrest attempted by the public servant was illegal. *See Traylor v. State*, 43 S.W.3d 725, 729 (Tex.App.Beaumont 2001, no pet.); *Cooper v. State*, 956 S.W.2d 95, 98 (Tex.App.-Tyler 1997, pet. ref'd). It is a fundamental tenet of this law that, "The line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decid-

ed by the courts." *Cooper*, 956 S.W.2d at 98; *State v. Mayorga*, 901 S.W.2d 943, 946 (1995) (quoting *Ford v. State*, 538 S.W.2d 633, 635 (Tex.Crim.App.1976)). The duty of a citizen is to submit to the arrest, legal or not, and later resolve the issue in the due course of law. Appellant's second ground of error is overruled.

Appellant's third point of error is that the evidence is factually insufficient to support the conviction, because of the absence of evidence that he interfered with the officers' discharge of official duties by anything other than talking to them. However, the essence of the offense as alleged and tried is that the officers were assaulted when trying to arrest appellant. As discussed in the preceding point of error, the legality of the attempted arrest is not a defense. We have carefully reviewed the evidence and find it factually sufficient to support the conviction. *See Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

■ In his final point of error appellant urges that "the detention and arrest of appellant was an unlawful exercise of public authority and violated his right to due process of law." He argues that both the Fourth Amendment of the United States Constitution and Article 1, Section 9, of the Texas Constitution guarantee that people are secure in their homes from unreasonable searches and seizures and that this attempted arrest of appellant was unlawful because it was without probable cause and was without a warrant. U.S. Const. Amend. IV; Tex. Const. art. I, § 9. However, regardless of the lawfulness of the attempted arrest, the duty of the citizen is to submit and not resist the arrest. *Gonzalez v. State*, 574 S.W.2d 135, 137 (Tex.

---

**3.** Resisting arrest has a lesser penalty than interference with a public servant. See Sec. 22.01(b), assault on a public official, third

degree felony; Sec. 38.03(c), resisting arrest, Class A misdemeanor.

Crim.App.1978) ("Regardless of whether the appellant's arrest was lawful or unlawful, the deputy constable was in the lawful discharge of his duty when he attempted to arrest appellant."). The point of error is overruled.

The judgment is AFFIRMED.