

**NUMBERS
13-10-00064-CR
13-10-00065-CR[1]**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**FLORIA JEAN ROBINSON,**                                                  **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

---

**OLIN ANTHONY ROBINSON,**                                           **Appellant,**

**v.**

**THE STATE OF TEXAS,**                                                  **Appellee.**

---

**On appeal from the 24th District Court
of Jackson County, Texas.**

---

# MEMORANDUM OPINION

---

[1] On January 13, 2011, this Court granted an agreed motion to consolidate appellate cause numbers 13-10-00064-CR and 13-10-0065-CR.

**Before Justices Garza, Vela, and Perkes**
**Memorandum Opinion by Justice Garza**

A jury found appellant Floria Jean Robinson guilty of evading arrest or detention with a vehicle, *see* TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(B) (Vernon Supp. 2010), and imposed punishment of two years' confinement in the Texas Department of Criminal Justice–State Jail Division and a $10,000 fine. *See id.* § 12.25 (Vernon Supp. 2010). The jury also found appellant Olin Anthony Robinson guilty of the third-degree felony offense of assault on a public servant, *see id.* § 22.01(a)(1), (b)(1) (Vernon Supp. 2010), and imposed punishment of four years' imprisonment in the Texas Department of Criminal Justice–Institutional Division and a $10,000 fine. *See id.* § 12.34 (Vernon Supp. 2010). By two issues in appellate cause number 13-10-064-CR, Floria contends: (1) the trial court erred in denying her motion to quash the indictment; and (2) the evidence is legally insufficient to support her conviction. By a single issue in appellate cause number 13-10-065-CR, Olin contends the trial court erred in denying his motion to suppress evidence. We affirm both convictions.

## I. BACKGROUND

Floria and her husband, Olin, were tried together. The State's primary witness at trial was the arresting officer, Bobby Doelitsch, then a deputy with the Jackson County Sheriff's Department. Around 11:30 p.m. on May 7, 2005, Deputy Doelitsch noticed a vehicle with a defective brake light. When Deputy Doelitsch was several car lengths away, he observed that the vehicle failed to stop completely at a stop sign and failed to properly signal a turn. Deputy Doelitsch activated his overhead lights and videorecorder. It is undisputed that the vehicle's driver—later determined to be Floria—

2

did not stop, but continued for three and a half blocks before turning into her own driveway and finally stopping at the back of her house. According to Deputy Doelitsch, Floria drove for thirty-nine seconds—a distance of a quarter of a mile—after he activated his overhead lights. After Floria stopped, she exited the pickup, ignoring the officer's request that she remain in the truck; instead, she attempted to reach into the back of the pickup. Deputy Doelitsch lowered the top of the truck bed's cover on Floria's hand to stop her from reaching inside the truck. Deputy Doelitsch called for backup because he did not have control of the situation. Floria interfered with Deputy Doelitsch's efforts to keep Olin inside the truck. Deputy Doelitsch arrested Floria, handcuffed her, and put her in the police vehicle.

By this time, approximately twenty people had gathered at the scene. Olin hit Deputy Doelitsch in the face with his fist. Deputy Doelitsch handcuffed and arrested Olin. Deputy Doelitsch did not issue a traffic citation to Floria because he had already arrested her. On cross-examination, Deputy Doelitsch testified that Olin was detained during his investigation of the traffic stop. Deputy Doelitsch admitted that he had no probable cause to believe that Olin was engaged in any illegal activity. No search was conducted of the pickup.

Vincent Flores Jr., an officer with the Edna Police Department, testified that he received a call for assistance from Deputy Doelitsch. When Officer Flores arrived, Floria and Olin were "screaming and yelling," using profanity, and "being dysfunctional." Officer Flores knew Floria and Olin and many of the people gathered at the scene. According to Officer Flores, the crowd was upset that the Robinsons had been arrested.

Bruce McConathy, a captain with the Edna Police Department, testified that he

3

also arrived at the scene to assist Deputy Doelitsch. Officer McConathy testified that his patrol car videorecorder was operating and recorded Floria being placed in Deputy Doelitch's police car.[2] According to Officer McConathy, Deputy Doelitsch did not have control of the situation because Floria was not complying with his orders.

Floria testified that her brake light was not out and that she did not run a stop sign. She admitted that she drove approximately three blocks to her house after the officer's emergency lights were activated because she was "afraid" she might be harmed. On cross-examination, Floria acknowledged that she refused to stop. When Deputy Doelitsch approached her at her house, she ignored him because she believed he had no reason to stop her. She admitted that if she had pulled over when the officer activated his lights, the situation "probably" would not have escalated as it did. Floria also admitted that the officer did not throw her in the police car, that she refused to be handcuffed, and that Deputy Doelitsch asked her to put her hands behind her back twelve times. Floria testified that when she saw the officer's vehicle with its emergency lights on, she was going to make her own decision as to when to stop.

## II. FLORIA'S ISSUES

### A. Motion to Quash Indictment

By her first issue, Floria contends the trial court erred in denying her motion to quash the indictment because it is "duplicitous" in that the caption and body of the indictment appear to allege different offenses.

---

[2] The videotape, State's Exhibit 12, was admitted and played for the jury. As the prosecutor explained, the significance of the videotape is that it refutes Floria's claim that she was "thrown" into the police car. We have reviewed State's Exhibit 12 and conclude that it does not reflect that Floria was "thrown" into the police car. At trial, Harrison Stafford, County Judge of Jackson County, testified that he was presiding over a county commissioners' court meeting on May 9, 2005 when Floria appeared to complain of her treatment by the officers. An audio recording of the commissioners' court meeting and a transcript of the audiotape were also admitted as evidence.

4

## 1. Standard of Review and Applicable Law

"The sufficiency of a charging instrument presents a question of law." *Smith v. State*, 309 S.W.3d 10, 13 (Tex. Crim. App. 2010). "An appellate court therefore reviews a trial judge's ruling on a motion to quash a charging instrument de novo." *Id.* at 13-14. "In determining whether a defendant has sufficient notice to prepare his or her defense, we must determine whether the charging instrument fails to provide all the requisites of 'notice.'" *State v. Brown*, 314 S.W.3d 487, 492 (Tex. App.–Texarkana 2010, no pet.) (citing *Olurebi v. State*, 870 S.W.2d 58, 61 (Tex. Crim. App. 1994)). "Subject to rare exceptions, an indictment tracking the language of the statute will satisfy constitutional and statutory requirements; the State need not allege facts that are merely evidentiary in nature." *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998). "[I]f the language of the statute is itself completely descriptive of the offense, an information is sufficient if it follows the statutory language." *Id.*

## 2. Discussion

In her pre-trial motion to quash, Floria complained that there is a discrepancy between the caption of the indictment, which cites the offense of failure to identify in violation of section 38.02 of the penal code, *see* TEX. PENAL CODE ANN. § 38.02 (Vernon Supp. 2010), while the body of the indictment reflects that she is being charged with violating either: (1) section 545.421 of the transportation code (fleeing or attempting to elude a police officer), *see* TEX. TRANSP. CODE ANN. § 545.421 (Vernon Supp. 2010); or (2) section 38.04(b)(1) of the penal code (evading arrest or detention), *see* TEX. PENAL CODE ANN. § 38.04(b)(1). The motion alleged that "the Defendant has no way to ascertain which offense is to be prosecuted so that she may prepare a proper defense."

5

In arguing the motion to quash before the trial court, Floria's counsel argued that "there could be a confusion based on looking at the record as to which is being charged . . . ." The trial court denied the motion.

The caption of the indictment, set off from the body of the indictment by a double-lined box, states, "Offense:  Evading Detention With a Vehicle," but references "Sec. 38.02."  The body of the indictment states, in pertinent part, that on or about May 7, 2005, Floria did then and there

> intentionally flee from Bobby Doelitsch, a person [Floria] knew to be a peace officer, to wit:  a Deputy with the Jackson County Sheriff's Office, attempting to lawfully arrest and detain the said [Floria], and [Floria] did then and there use a vehicle while the said [Floria] was in flight.

Floria's argument that the indictment is defective because the caption incorrectly references section 38.02 of the penal code is without merit.  It is well settled that the caption is not considered to be a part of the indictment.  *See Steadman v. State*, 160 S.W.3d 582, 586 n.3 (Tex. App.–Waco 2005, pet. ref'd).

With regard to Floria's argument that there is "confusion" as to whether she was being charged with "fleeing" under the transportation code or "evading" under the penal code, we note that the court of criminal appeals—and this Court—have held that the offense of fleeing or attempting to elude a police officer under section 545.421 of the transportation code is not a lesser-included offense of evading arrest under section 38.04 of the penal code.  *See McKithan v. State*, 324 S.W.3d 582, 591-92 (Tex. Crim. App. 2010) (citing *Farrakhan v. State*, 263 S.W.3d 124, 132 (Tex. App.–Houston [1st Dist.] 2006), *aff'd,* 247 S.W.3d 720, 720-24 (Tex. Crim. App. 2008)); *see also Adams v. State*, No. 13-09-334-CR; 2010 Tex. App. LEXIS 5588, at **25-26 (Tex. App.–Corpus Christi July 15, 2010, pet. ref'd) (mem. op., not designated for publication).

6

The elements of fleeing or attempting to elude a police officer under section 545.421 of the transportation code are: (1) a person; (2) operates a motor vehicle; (3) and wilfully; (4) fails or refuses to bring the vehicle to a stop; or (5) flees or attempts to elude a pursuing police vehicle; (6) when given a visual or audible signal to bring the vehicle to a stop; (7) and the signal is by hand, voice, emergency light, or siren; (8) the officer giving the signal is in uniform; (9) with a prominently displayed badge, and (10) the officer's vehicle is appropriately marked as a law enforcement vehicle. *See* TEX. TRANSP. CODE ANN. § 545.421. In contrast, the elements of evading arrest or detention under section 38.04 as alleged required the State to prove that (1) Floria (2) intentionally (3) fled (4) from Deputy Doelitsch, (5) knowing that Deputy Doelitsch was a peace officer (6) and that he was attempting to lawfully arrest or detain her, and (7) she used a vehicle while in flight. S*ee* TEX. PENAL CODE ANN. § 38.04(a)(b)(1)(B). Here, the indictment precisely tracked the elements required for the offense of evading arrest or detention under section 38.04 of the penal code. *See id.* It did not allege—and the State was not required to prove—the additional elements that Deputy Doelitsch was in a police vehicle, that he gave a signal to stop, that he was in uniform with a prominently displayed badge, or that his vehicle was marked as a law enforcement vehicle. *See* TEX. TRANSP. CODE ANN. § 545.421.

We conclude that, because the language of section 38.04 is completely descriptive of the nature of the offense and the indictment tracked the statutory language, the indictment provided sufficient notice. *See Mays*, 967 S.W.2d at 406. We overrule Floria's first issue.

**B. Sufficiency of the Evidence**

By her second issue, Floria contends the evidence is legally and factually insufficient to support her conviction. We disagree.

**1. Standard of Review and Applicable Law**

The court of criminal appeals has recently held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902-03, 912 (Tex. 2010) (plurality op.). Accordingly, we review Floria's claims of evidentiary sufficiency under "a rigorous and proper application of the *Jackson* standard of review." *Id.* at 906-07, 912.[3]

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 898-99 (characterizing the *Jackson* standard as: "Considering all of the evidence in the light most favorable to the verdict, was a jury rationally justified in finding guilt beyond a reasonable doubt").

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.–Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234,

---

[3] We note that in a post-submission letter brief, Floria's counsel contends "that the standard announced by the Court of Criminal Appeals of Texas in *Brooks* is overly rigid and does not apply when a violation of a federal right is implicated." As an intermediate court of appeals, we are bound to follow the precedent of the court of criminal appeals. *See* TEX. CONST. art. V, § 5(a); *Purchase v. State*, 84 S.W.3d 696, 701 (Tex. App.–Houston [1st Dist.] 2002, pet. ref'd).

240 (Tex. Crim. App. 1997)). The elements of the offense of evading arrest or detention by using a vehicle are: (1) a person (2) intentionally (3) flees (4) from a person (5) she knows is a peace officer (6) attempting to lawfully arrest or detain her and (6) the actor uses a vehicle while in flight. TEX. PENAL CODE ANN. § 38.04(a), (b)(1)(B); *see Calton v. State*, 176 S.W.3d 231, 234 (Tex. Crim. App. 2005) (en banc).

### 2. Discussion

Floria argues that the evidence is legally insufficient to show that she was "fleeing." *See* TEX. PENAL CODE ANN. § 38.04(a). Specifically, Floria contends that, "[d]riving three blocks at a slow speed to her driveway after seeing emergency [lights] activated cannot be considered 'intentionally fleeing' under the facts and circumstances in this case." Floria points to Deputy Doelitsch's testimony that after he activated his emergency lights, she maintained the same rate of speed, did not attempt to accelerate, and after she stopped at her home, did not attempt to run away or leave the scene.[4]

We are unpersuaded by Floria's argument. "The statute does not require high-speed fleeing, or even effectual fleeing. It requires only an attempt to get away from a known officer of the law. Thus, under the law, fleeing slowly is still fleeing." *Mayfield v. State*, 219 S.W.3d 538, 541 (Tex. App.–Texarkana 2007, no pet.). "'[F]leeing' is anything less than prompt compliance with an officer's direction to stop." *Horne v. State*, 228 S.W.3d 442, 446 (Tex. App.–Texarkana 2007, no pet.); *see also Sartain v. State,* No. 03-09-00066-CR, 2010 Tex. App. LEXIS 3877, at *5-8 (Tex. App.–Austin May 19, 2010, no pet.) (memo. op., not designated for publication) (concluding that

---

[4] We note that Floria also points to her testimony denying that she ran a stop sign and that her brake light was out. However, neither of her issues on appeal challenge the legitimacy of the stop or her arrest. Moreover, the jury was free to believe Deputy Doelitsch's version of events rather than Floria's version. *See Lancon v. State*, 253 S.W.3d 699, 707 (Tex. Crim. App. 2008).

Sartain intended to flee when he moved his truck half a block to a house where he was allegedly living and when he continued to ignore the officer, walking away from him even after stopping at the house); *Small v. State,* No. 05-02-1328-CR, 2003 Tex. App. LEXIS 7898, at *3-6 (Tex. App.–Dallas Sept. 10, 2003, no pet.) (not designated for publication) (determining the evidence established that Small was evading police when he drove two to three miles after the lights and sirens of several police cars were activated as they pursued his car, even though Small argued that he was only driving his vehicle home so it would not be towed).

Here, Floria's own testimony established that after she knew the officer's overhead lights were activated, she refused to stop and continued to drive three-and-a-half blocks to her house.[5] Floria demonstrated her intent not to stop when she testified that she did not pull over because she was "afraid." Assuming the trial court resolved any conflict in the testimony, weighed the evidence, and drew reasonable inferences in a manner supporting the verdict, and examining the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could find beyond a reasonable doubt that Floria was fleeing. *See Jackson,* 443 U.S. at 319. The evidence was therefore legally sufficient to support Floria's conviction. We overrule her second issue.

### III. OLIN'S ISSUE

**A. Motion to Suppress**

By a single issue, Olin contends that the trial court erred in denying his motion to suppress evidence because he was illegally detained.[6]

---

[5] State's Exhibit 1, a DVD recording of the events as recorded by Deputy Doelitsch's police vehicle recorder, was admitted and played for the jury. This Court also reviewed the DVD recording.

[6] In his brief, Olin argues that "any evidence subsequently obtained by Deputy Doelitsch due to

10

### 1. Standard of Review

Whether the trial court properly denied a defendant's motion to suppress is reviewed under a bifurcated standard of review. *St. George v.* State, 237 S.W.3d 720, 725 (Tex. Crim. App. 2007). We give almost total deference to the trial court's determination of historical facts and review de novo the trial court's application of law to facts not turning on credibility and demeanor. *Scardino v.* State, 294 S.W.3d 401, 405 (Tex. App.–Corpus Christi 2009, no pet.); *see Ford v. State*, 158 S.W.3d 488, 493 (Tex. Crim. App. 2005). When, as in this case, the trial court makes no explicit findings of historical fact, the evidence must be viewed in the light most favorable to the trial court's ruling. *St. George*, 237 S.W.3d at 725. We must uphold the trial court's ruling, if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *State v. Stevens*,, 235 S.W.3d 736, 740 (Tex. Crim. App. 2007). "Absent a clear abuse of discretion, the ruling on the admissibility of evidence will not be disturbed." *Fonseca v. State*, 881 S.W.2d 144, 149 (Tex. App.–Corpus Christi 1994, no pet.) (citing *Rivera v. State*, 808 S.W.2d 80, 96 (Tex. Crim. App. 1991)).

### 2. Discussion

Olin argues that he was illegally detained because Deputy Doelitsch admitted that he did not have probable cause to believe that Olin was engaged in any illegal activity. The State argues that the trial court did not err in denying Olin's motion to

---

the initial illegal detention of [Olin] is inadmissible and should have been suppressed." In his motion to suppress, Olin argued that his "statements" and "all things seized" after his detention and arrest were inadmissible. At trial, in arguing the motion to suppress, Olin's counsel argued that because there was no probable cause to detain Olin, his detention was illegal, "and then anything, any sequelae [sic] after that, Your Honor, was the result of an illegal detention." Because Olin was convicted of assaulting Deputy Doelitsch, we will assume—as the State does—that Olin's motion sought the suppression of all evidence of his assault on Deputy Doelitsch.

suppress because: (1) when an officer stops and lawfully detains a driver for committing a traffic offense, the officer may also make an investigative detention of a passenger in the vehicle; and (2) even if Olin had been unlawfully detained, the exclusionary rule is inapplicable "because it contemplates the illegal acquisition of existing evidence of a previously committed crime, and not evidence of an offense committed by appellant which the deputy could not foresee would occur."

We agree with the State's second argument that, assuming *arguendo* that Olin's initial detention was unlawful, evidence of his subsequent assault on Deputy Doelitsch was not subject to suppression under the exclusionary rule.

In *State v. Marquez*, the El Paso Court of Appeals recently addressed this issue. 281 S.W.3d 56, 60-62 (Tex. App.–El Paso 2008, pet. dism'd). In *Marquez*, in the course of investigating a family-violence call, Officer Louis Johnson arrested Marquez for littering and consumption of alcohol by a minor. *Id.* at 58. A scuffle ensued, and Marquez was charged with assault on a public servant. *Id.* Marquez filed a motion to suppress evidence, arguing that his arrest was unlawful. *Id.* The trial court found that Officer Johnson lacked credibility, found there was no probable cause to support Marquez's arrest, and granted the motion to suppress. *Id.* at 59-60.

The State appealed, arguing that even if Marquez's initial arrest was illegal, any evidence of his subsequent assault on Officer Johnson was not subject to suppression under the exclusionary rule. *Id.* at 60. The court of appeals found that the trial court was within its discretion to disbelieve Officer Johnson's testimony, and therefore, within its discretion to grant the motion to suppress evidence of the *initial arrest*. *Id.* at 61. The court found, however, that suppression of the evidence of the assault "call[ed] for a

12

different analysis" as follows:

> Under the Texas exclusionary rule, evidence obtained in violation of state or federal law may not be admitted against the accused in a criminal case. *See* TEX. CODE CRIM. PROC. ANN. art. 38.23. The phrase "obtained in violation of the law" contemplates that a crime has been committed, that evidence of a crime exists, and that the officer violated the law by attempting to obtain evidence of the previously committed crime. *State v. Mayorga*, 901 S.W.2d 943, 945-46 (Tex. Crim. App. 1995) (plurality op.); *Donoho v. State*, 39 S.W.3d 324, 327 (Tex. App.–Fort Worth 2001, pet. ref'd); *Cooper* [*v. State*], 956 S.W.2d [95], 98 [Tex. App.–Tyler 1997, pet. ref'd]. Thus, the evidence which must be excluded under article 38.23 is evidence of the crime that was committed prior to the officer's unlawful search or seizure, not evidence of a crime that was committed thereafter. *See Mayorga*, 901 S.W.2d at 946; *Bryant v. State*, 253 S.W.3d 810, [812-13 (Tex. App.–Amarillo Feb. 25, 2008, pet. dism'd] ; *Donoho*, 39 S.W.3d at 327 (holding that, because appellant committed the aggravated assault after his warrantless arrest, evidence of the assault was not obtained in "violation of the law"); *Cooper*, 956 S.W.2d at 98 (holding that the evidence of aggravated assault on a peace officer did not exist at the time the lawful or unlawful arrest was attempted and that the alleged illegality of the arrest was irrelevant to the crime of aggravated assault). Here, it is clear that the allegedly assaultive conduct occurred after the initial arrest. Accordingly, to the extent that the Court's order suppresses evidence of the alleged assault upon Officer Johnson, the State's issue is sustained.

*Id.* (footnote omitted); *see also Badillo v. State*, Nos. 07-07-081-CR, 07-07-082-CR, 07-07-083-CR, 2009 Tex. App. LEXIS 1465, at *11 (Tex. App.–Amarillo 2009, no pet.) (mem. op., not designated for publication) ("[W]e agree also with the State's contention that appellant's prosecution for assault on a public servant during the course of the arrest does not depend on the arrest's lawfulness."); *Quigley v. State*, No. 05-02-294-CR, 2003 Tex. App. LEXIS 2362, at **5-6 (Tex. App.–Dallas 2003, pet. ref'd) (mem. op., not designated for publication) (holding trial court did not err in denying motion to suppress because evidence of assault on a peace officer did not exist at the time the unlawful arrest was attempted).

We agree with the reasoning of the El Paso Court in *Marquez*. *See Marquez*,

281 S.W.3d at 61. Thus, if Olin's assault of Deputy Doelitsch occurred *after* his allegedly illegal detention, evidence of the assault was not obtained "in violation of the law" and the trial court did not err in declining to suppress it.

Deputy Doelitsch testified that *before* the alleged struggle, Olin was "not free to leave" and was "detained with the vehicle" because he was "not just going to let the passengers walk away." He also testified that when Olin hit him in the face, he was attempting to arrest Olin. Deputy Doelitsch testified that Olin was "not free to leave until the traffic stop [was] over with." According to Deputy Doelitsch, up until his struggle with Olin, he "just wanted [Olin] to stay there." He testified that he did not know whether there were drugs or weapons in the vehicle and he was not "going to just let [Olin] get out and go in the house." Thus, Deputy Doelitch's testimony established that Olin was clearly detained—legally or illegally—*before* the assault. Accordingly, when Olin's allegedly unlawful detention began, evidence of his assault on Deputy Doelitsch did not yet exist and his allegedly illegal detention was irrelevant to his assault of Deputy Doelitsch. *See Marquez*, 281 S.W3d at 61; *Cooper*, 956 S.W.2d at 98.

In addition, this Court noted in *Tucker v. State* that "regardless of the lawfulness of the attempted arrest, the duty of the citizen is to submit and not resist the arrest." 114 S.W.3d 718, 723-24 (Tex. App.–Corpus Christi 2003, pet. ref'd). In *Tucker*, the appellant was convicted in two cases of assault on a public servant. *Id.* at 719. Appellant challenged the sufficiency of the evidence supporting his conviction, arguing that the police officers were not discharging an official duty because his attempted arrest was unlawful. *Id.* at 722; *see* TEX. PENAL CODE ANN. §22.01(b)(1) (Vernon Supp. 2010). In rejecting the appellant's argument, this Court observed:

14

Several courts of appeal have also held that it is not a defense to assaulting a public servant in the lawful discharge of his official duties that the arrest attempted by the public servant was illegal. *See Traylor v. State*, 43 S.W.3d 725, 729 (Tex. App.–Beaumont 2001, no pet.); *Cooper v. State*, 956 S.W.2d 95, 98 (Tex. App.–Tyler 1997, pet. ref'd). It is a fundamental tenet of this law that, "The line between an illegal and legal arrest is too fine to be determined in a street confrontation; it is a question to be decided by the courts." *Cooper*, 956 S.W.2d at 98; *State v. Mayorga*, 901 S.W.2d 943, 946 (1995) (quoting *Ford v. State*, 538 S.W.2d 633, 635 (Tex. Crim. App. 1976)). The duty of a citizen is to submit to the arrest, legal or not, and later resolve the issue in the due course of law.

*Tucker*, 114 S.W.3d at 723.

We hold the trial court did not err in denying Olin's motion to suppress evidence and overrule his sole issue.

## IV. Conclusion

We affirm the convictions in cause numbers 13-10-064-CR and 13-10-065-CR.

DORI CONTRERAS GARZA
Justice

Do not publish.
Tex. R. App. P. 47.2(b)
Delivered and filed the
10th day of March, 2011.

15