

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00141-CR

_____


KAREN KAY PHILLIPS, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the County Court at Law No. 2
Smith County, Texas
Trial Court No. 002-2054-23



Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice van Cleef

## MEMORANDUM OPINION

A Smith County jury found its former county clerk, Karen Kay Phillips, guilty of interfering with public duties, a class B misdemeanor, in connection with an officer's arrest of her son, Derek Phillips. *See* TEX. PENAL CODE ANN. § 38.15(b). After a sentencing hearing, the trial court sentenced Phillips to thirty days' confinement in jail and ordered her to pay a $500.00 fine but suspended the sentence in favor of placing Phillips on community supervision for one year.

On appeal, Phillips argues that the trial court erred by denying her motion to suppress and contends the evidence is legally insufficient to support the jury's verdict of guilt.[1] She also argues that a subpoenaed witness's failure to testify violated her Confrontation Clause rights. We find that the trial court properly denied Phillips's suppression motion and that legally sufficient evidence supports the jury's finding of guilt. We also find that Phillips failed to preserve her Confrontation Clause complaint. As a result, we affirm the trial court's judgment.

## I.     The Trial Court Properly Overruled Phillips's Suppression Motion

Phillips filed a motion to suppress evidence "obtained as a result of an illegal warrantless entry into her residence." The State argues that there was no search or seizure related to Phillips's offense on the day of the incident, that Phillips's cell phone was later seized pursuant to a warrant, and that Phillips does not challenge the validity of the seizure of her cell phone, which contained recordings of the incident. The State also argues that the exclusionary rule does

---

[1] Originally appealed to the Twelfth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Twelfth Court of Appeals in deciding the issues presented. *See* TEX. R. APP. P. 41.3.

not apply because Phillips committed a new independent offense after any alleged unlawful entry into her home. To fully appreciate Phillips's arguments, we explain the circumstances surrounding the officer's warrantless entry into her home.

### A. The Suppression Hearing

Evidence at the suppression hearing showed that this incident arose out of a March 28, 2023, traffic stop of Cody Voss that went awry after Phillips's thirty-six-year-old son, Derek, interfered with the traffic stop. A recording of the incident admitted by Phillips shows that Jonathan Peters, a deputy with the Smith County Sheriff's Office (SCSO), pulled Voss's vehicle over at night for not having working taillights. Voss and Derek, who was in his own vehicle, pulled into Phillips's driveway. Voss and Derek immediately exited their vehicles and began recording the traffic stop on their cell phones as Peters exited his patrol car.

The recording shows that Voss began mistakenly arguing with Phillips that his lack of taillights was not a crime, and Derek also began arguing with and yelling at Peters. *See* TEX. TRANSP. CODE ANN. §§ 547.004, 547.322 (explaining that failure to have working taillights is a misdemeanor offense). Voss refused to provide identification, another crime pursuant to Section 38.02 of the Texas Penal Code, and was placed in handcuffs. *See* TEX. PENAL CODE ANN. § 38.02 (Supp.). At that point, Derek became extremely belligerent, repeatedly interfered with Peters's traffic stop, threatened Peters's job, and falsely accused Peters of kidnapping Voss. Derek yelled multiple obscenities at Peters. The recording demonstrates Peters's difficulty in apprehending Voss on his own as Derek came closer to him while unhinged.

3

At the suppression hearing, Phillips did not contest those facts. She testified that she went outside after seeing red and blue lights at her window and found Derek and Voss outside. According to Phillips, Voss was in handcuffs, and she approached Peters, who said that Voss failed to provide him with identification after being pulled over for malfunctioning taillights. Phillips went inside, obtained her cell phone, and began recording the incident with her phone from the open garage.

SCSO deputy, Riley Rugg, arrived as backup to Peters. By that time, Derek had retreated from the driveway into the open garage but was still yelling. According to Phillips, Rugg asked Derek "to come out" of the garage, but Derek refused because "[h]e did not want to go outside the home." Derek then told Rugg to come to him, and Rugg agreed.

At that point, Phillips said that both officers charged into the garage and passed her while Derek ran into the house. Both officers pursued Derek into a bedroom to arrest him for interfering with a traffic stop. *See* TEX. PENAL CODE ANN. § 38.15(b). Derek required the officers to tackle him and struggle to restrain him while screaming. Derek was found guilty by a jury of interference with a public servant and resisting arrest while inside of Phillips's home.

Phillips's offense resulted from her reaction to Derek's arrest. Recordings of the incident show that Phillips yelled at the officers to leave her house while Derek told them to get away from him. Phillips also repeatedly refused the officers' instructions to get back and instead remained close to Derek while recording the incident on her cell phone. The State accused her of poking an officer and blocking the officers' exit from the bedroom, but Phillips testified that she

4

was getting their attention because Derek's glasses were knocked to the floor during his arrest, and she was concerned that Derek could not see without them because he was legally blind.

When questioned about what evidence she sought to suppress, Phillips argued that the footage of the body cameras worn by the officers showing her reaction after they entered her home without her permission should not be admitted into evidence. Even so, Phillips clarified that there was no search of her residence or seizure of any item and that she was not arrested until April 4, 2023.

After reviewing the evidence, which included the recordings taken by Phillips that were admitted into evidence, the trial court denied Phillips's suppression motion.

### B.      Standard of Review

"We review a trial court's ruling on a motion to suppress under a bifurcated standard." *Johnson v. State*, 682 S.W.3d 638, 647 (Tex. App.—Tyler 2024, pet. ref'd) (citing *Hubert v. State*, 312 S.W.3d 554, 559 (Tex. Crim. App. 2010); *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000)). "A trial court's decision to grant or deny a motion to suppress is generally reviewed under an abuse of discretion standard." *Id.* (citing *Crain v. State*, 315 S.W.3d 43, 48 (Tex. Crim. App. 2010); *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008)).

"We give almost total deference to a trial court's determination of historical facts, especially if those determinations turn on witness credibility or demeanor and review de novo the trial court's application of the law to facts not based on an evaluation of credibility and demeanor." *Id.* (citing *Neal v. State*, 256 S.W.3d 264, 281 (Tex. Crim. App. 2008)). "At a

5

suppression hearing, a trial court is the exclusive trier of fact and judge of the witnesses' credibility." *Id.* (citing *Maxwell v. State*, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)). "Accordingly, a trial court may choose to believe or disbelieve all or any part of a witness's testimony." *Id.* (citing *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000)). "However, a trial court has no discretion in determining what the law is or applying the law to the facts." *Id.* (citing *State v. Kurtz*, 152 S.W.3d 72, 81 (Tex. Crim. App. 2004)). "Thus, a failure by a trial court to analyze or apply the law correctly constitutes an abuse of discretion." *Id.* (citing *Kurtz*, 152 S.W.3d at 81).

The Fourth Amendment provides, "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. amend. IV. In order to legally "cross the threshold of a private residence, . . . the State must leap two hurdles." *Parker v. State*, 206 S.W.3d 593, 597 (Tex. Crim. App. 2006). "Probable cause that points like a beacon toward the location (but not necessarily any particular person) is the first hurdle." *Id.* The court in *Dansby v. State* stated,

> Probable cause for a warrantless arrest exists if, at the moment the arrest is made, the facts and circumstances within the arresting officer's knowledge, and of which he has reasonably trustworthy information, are sufficient to warrant a prudent man in believing that the person arrested had committed or was committing an offense.

*Dansby v. State*, 530 S.W.3d 213, 220–21 (Tex. App.—Tyler 2017, pet. ref'd) (citing *Amador v. State*, 275 S.W.3d 872, 878 (Tex. Crim. App. 2009)). "The second hurdle is that exigent circumstances, those which justify an immediate need to enter a residence without first obtaining a search warrant, must also exist." *Parker*, 206 S.W.3d at 597 (citing *Estrada v. State*, 154 S.W.3d 604, 608 (Tex. Crim. App. 2005)). "If either probable cause or exigent circumstances

6

are not established, a warrantless entry will not pass muster under the Fourth Amendment." *Id.*

In our review,

> Just as an officer, in the heat of the moment, will use all facts available to him in deciding whether to enter a home without a warrant, so must [we] analyze each piece of evidence as part of the totality of information, as it relates to both the probable cause and the exigent circumstances determinations.

*Id.* at 601.

### C.    Analysis

Here, the evidence meets the first *Parker* factor, and Phillips does not argue otherwise. *See id.* at 597. The trial court entered written findings that Derek "was approaching and yelling at the deputy while he attempted to conduct the traffic stop," that Phillips "also approached Deputy Peters at [that] point," that Derek and Phillips retreated into the garage after Rugg arrived, and that Derek refused Rugg's orders to come to him and instead "ran into the interior of the residence." As a result, the trial court found that "Rugg and Peters pursued [Derek] into the residence and took him into custody." Based on those facts, the trial court concluded that officers had exigent circumstances to enter the residence, a conclusion that we examine.

The record establishes that Voss was properly detained by Peters for the defective taillights since "[a] temporary detention is justified when a person commits a traffic violation in an officer's presence." *McFadden v. State*, 283 S.W.3d 14, 18 (Tex. App.—San Antonio 2009, no pet.) (citing *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992)). Once Voss failed to provide his identification, he committed a crime in Peters's presence that justified his arrest. *See* TEX. PENAL CODE ANN. § 38.02. Derek committed the crime of interfering with Peters's public duties during Voss's arrest. *See* TEX. PENAL CODE ANN. § 38.15. It is well-known that

7

exigent circumstances are an exception to the warrant requirement, and "hot pursuit of a fleeing suspect" is an exigent circumstance that allows "[p]olice officers [to] enter [a] premises without a warrant." *Kentucky v. King*, 563 U.S. 452, 460 (2011); *see Missouri v. McNeely*, 569 U.S. 141, 149 (2013). Such an action can be seen as reasonable to "prevent a suspect's escape." *Lange v. California*, 594 U.S. 295, 301 (2021) (quoting *Minnesota v. Olson*, 495 U.S. 91, 91 (1990)).

But, in *Lange*, the United States Supreme Court noted that, while "[a] great many misdemeanor pursuits involve exigencies allowing warrantless entry" into a home without permission, "whether a given one does so turns on the particular facts of the case." *Id.* at 299. Thus, for the purposes of our analysis, we assume, without deciding, that Derek's offenses were non-serious misdemeanors that required a warrant.

Even so, the trial court also overruled Phillips's suppression motion on another ground. The trial court found that "[n]o search was conducted of [Phillips] or her residence on March 28, 2023," and that she was not arrested on that date. Instead, the trial court found that Phillips, while inside the home, "approached the deputies as they were attempting to detain [Derek] and then reached between the deputies and [Derek] while standing in between them and the door," that that provided evidence of a "new and independent offense," and that Phillips was arrested after warrants were obtained on April 4, 2023. Based on those facts, the trial court concluded that "[e]vidence of a new and independent offense committed while in a residence and in the presence of a law enforcement officer, even after an unauthorized entry into a residence, is admissible." We must examine this reasoning for overruling Phillips's motion.

The Texas exclusionary rule states,

> No evidence obtained by an officer . . . in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a). As the Texas Court of Criminal Appeals has explained, the phrase "obtained in violation of the law" contained within Article 38.23 "contemplates that a crime has been committed; that evidence of that crime exists; and that officers violate the law in attempting to obtain evidence of the *previously* committed crime." *State v. Mayorga*, 901 S.W.2d 943, 945–46 (Tex. Crim. App. 1995) (emphasis added). As a result, to violate Article 38.23, "the officers must act illegally in obtaining existing evidence" of a prior offense. *Id.* at 946.

Here, even assuming the officers entered Phillips's home illegally, Derek committed the offense of resisting arrest while in the home, which fell within the "new crime" exception to the Texas exclusionary rule. *See State v. Iduarte*, 268 S.W.3d 544, 549 (Tex. Crim. App. 2008); *Day v. State*, 614 S.W.3d 121, 129 (Tex. Crim. App. 2020) (finding that the "exclusionary rule principles . . . do not apply to the offense of evading arrest"). In applying this exception, the Tyler Court of Appeals has found that there is no "common law right to resist an unlawful arrest" because "the use of self-help to prevent an unlawful arrest presents too great a threat to the safety of individuals and society to be sanctioned." *Cooper v. State*, 956 S.W.2d 95, 97–98 (Tex. App.—Tyler 1997, pet. ref'd) (quoting *Mayorga*, 901 S.W.2d at 945). In explaining this exception, the Texas Court of Criminal Appeals has written that, when a person resists arrest, even where unlawful,

9

> the evidence of the resistance is not obtained in violation of . . . art. 38.23 . . . and therefore, the exclusionary rule is not applicable. Excluding the evidence in a case such as this would have no other result than to stymie a police officer in carrying out his duties in the future.

*Iduarte*, 268 S.W.3d at 550 (quoting *Mayorga*, 901 S.W.2d at 946). Accordingly, the exclusionary rule "does not . . . provide limitless protection to one who chooses to react illegally to an unlawful act by a state agent." *Id.* at 551.

We conclude that, just as Derek's resisting arrest offense was "a subsequent independent criminal act" occurring after the alleged unlawful entry into the home, Phillips's offense of interfering with Derek's arrest was a subsequent independent criminal act that fell within the new crime exception to the Texas exclusionary rule. *Id.* As a result, we find that the trial court properly overruled Phillips's suppression motion, and we overrule Phillips's first point of error.

## II.     Legally Sufficient Evidence Supports the Jury's Finding of Guilt

In her second point of error, Phillips argues that the evidence is insufficient to support the jury's verdict. We disagree.

### A.     Standard of Review

"When evaluating the sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt." *Lymbery v. State*, 686 S.W.3d 466, 472 (Tex. App.—Tyler 2024, pet. ref'd) (citing *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010)); *see Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "The factfinder is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony." *Lymbery*, 686 S.W.3d at 473 (citing *Penagraph v. State*, 623 S.W.2d 341, 343

10

(Tex. Crim. App. [Panel Op.] 1981)). "The factfinder may accept one version of the facts and reject another or reject any of a witness's testimony." *Id.* (citing *Penagraph*, 623 S.W.2d at 343).

"A reviewing court must give full deference to the factfinder's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id.* (citing *Hooper*, 214 S.W.3d at 13). "If the record contains conflicting inferences, we must presume that the factfinder resolved such facts in favor of the verdict and defer to that resolution." *Id.* (citing *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). "In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id.* (citing *Clayton*, 235 S.W.3d at 778).

"Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt." *Id.* (quoting *Rodriguez v. State*, 521 S.W.3d 822, 827 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (citing *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011))). "Each fact need not point directly and independently to the appellant's guilt, provided that the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Id.* (citing *Hooper*, 214 S.W.3d at 13). "The factfinder may draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial." *Id.* (citing *Hooper*, 214 S.W.3d at 15).

"The sufficiency of the evidence is measured against the offense as defined by a hypothetically correct jury charge." *Johnson*, 682 S.W.3d at 650 (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). "Such a charge would include one that 'accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the [S]tate's burden of proof or unnecessarily restrict the [S]tate's theories of liability, and adequately describes the particular offense for which the defendant is tried.'" *Id.* (quoting *Malik*, 953 S.W.2d at 240).[2]

A person commits the offense of interference with public duties if that "person with criminal negligence interrupts, disrupts, impedes, or otherwise interferes with . . . a peace officer while the peace officer is performing a duty or exercising authority imposed or granted by law." TEX. PENAL CODE ANN. § 38.15(a)(1). Here, the State alleged that Phillips "did then and there while Jonathan Peters, . . . a peace officer, was performing a duty or exercising authority imposed or granted by law, namely attempting to detain Derek Phillips, with criminal negligence, interrupt, disrupt, impede, or interfere with [Peters] by reaching between [Peters] and Deputy Riley Rugg and Derek Phillips."

## B.     The Evidence at Trial

Peters testified that, during Voss's detention, Derek "was interjecting himself into the traffic stop, convincing Mr. Voss not to provide his identifying information." Peters said that Derek approached him multiple times, causing him to focus on Derek instead of Voss.

---

[2]Although Phillips raises a factual sufficiency complaint in her brief, we decline to conduct such a review since the Texas Court of Criminal Appeals has determined that a legal-sufficiency standard of review is indistinguishable from a factual-sufficiency standard of review. *See Brooks v. State*, 323 S.W.3d 893, 901 (Tex. Crim. App. 2010).

According to Peters, Phillips came out of her home to ask what was happening. When Rugg arrived on the scene, Peters and Rugg attempted to detain Derek, who ran into the house and into a bedroom to prevent his detention. Peters testified that, because of Derek's noncompliance, they had to forcefully detain him.

According to Peters, they had a difficult time getting Derek out of the home because Phillips was blocking the door. Peters said he "had to kind of push her out of the way so [he] could get by" and tell her to get back, but Phillips refused to step away. Peters said that Phillips "poked" his vest and reached her arm out to Rugg. Peters testified that Phillips impeded his ability to perform his duties in detaining and arresting Derek. Peters's testimony was corroborated by his body-camera footage, which showed Phillips's actions during Derek's arrest. The footage shows that Phillips grabbed Rugg, poked Peters, and stood between Peters and Derek, and Peters and the bedroom doorway.

Philip Greanead, a detective with the SCSO, was assigned to investigate Phillips's case. Greanead testified that his review of the body-camera footage showed probable cause that Phillips had interfered with a public servant. Messages retrieved from Phillips's phone showed that she agreed they were "using a high volume of language and language that is considered insulting and offensive, which isn't a crime." Phillips also wrote that she "interrupt[ed]" a police officer because she was "extremely confused as to why [she] wasn't arrested as well." Greanead noticed that Rugg was having to swerve to get around Phillips and concluded that, after reviewing the arrest footage, Phillips interfered with Derek's detention.

The jury saw a photograph of Phillips's hands between Derek and Peters. The jury was also read an excerpt of a federal complaint filed by Phillips against Smith County, Peters, Rugg, Greanead, and Sheriff Larry Smith, in which Phillips admitted, "The video clearly shows me using my pointer finger on the shoulder of Jonathan Peters and poke him four times."

Phillips testified in her defense. Initially, she admitted that, after Rugg entered the garage, it was her intention to stop him from detaining Derek, but she immediately recanted the statement by saying she was protecting herself because she thought Rugg was charging toward her. Phillips said she was in shock and did not know what was happening. Phillips testified that she stuck her arm between Derek and Peters while they were in the bedroom to get Peters's attention. She also claimed that she was not interfering with the arrest but was merely trying to get the officers to return Derek's glasses, which had fallen to the floor, because he could not see without them. Phillips admitted that she was grabbing her son's arm when he was "in handcuffs and they're leading him out of the house." She also admitted that she was "standing in front of the only exit" of the bedroom but claimed there was nowhere else to go.

## C. Analysis

Peters testified that Phillips impeded his ability to perform his duties in detaining and arresting Derek. In her brief, Phillips does not contest that her actions impeded Derek's arrest. Instead, Phillips argues that the evidence is legally insufficient to support her conviction because (1) "there was no physical action by Phillips towards Peters," and (2) she did not *intend* to interfere with Peters's official duties.

14

As for Phillips's first argument, it is a defense to the offense of interference with public duties "that the interruption, disruption, impediment, or interference alleged consisted of speech only." TEX. PENAL CODE ANN. § 38.15(d). Contrary to Phillips's argument, the evidence established that Phillips took physical action that impeded Peters's arrest of Derek. The State was required to prove in its indictment that Phillips reached between Peters, Rugg, and Derek during the arrest. The recordings reviewed by the jury, and Phillips's own testimony, established that that occurred. Accordingly, the State proved the actus reus, as alleged.

Next, Phillips questions whether the State proved the mens rea element of the offense. The State had the burden to prove that Phillips acted with "criminal negligence," which is defined as follows:

> A person acts with criminal negligence, or is criminally negligent, with respect to circumstances surrounding [her] conduct or the result of [her] conduct when [s]he ought to be aware of a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that the failure to perceive it constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the actor's standpoint.

TEX. PENAL CODE ANN. § 6.03(d). Therefore, the State was required to prove that Phillips ought to have been aware of a substantial and unjustifiable risk that her actions interrupted, disrupted, impeded, or otherwise interfered with Peters's arrest of Derek and that Phillips's failure to perceive the risk was a "gross deviation from the standard of care that an ordinary person would exercise." *Id.*

In this case, Phillips's offense occurred due to her failure to heed warnings to stay back during the arrest. The evidence establishes that she kept getting close to the officers and Derek

15

while they were attempting to arrest him. Peters testified that he had to "kind of push" Phillips "out of the way" and that Phillips refused to step back. The evidence also shows that Phillips poked Peters, up to four times. Although Phillips testified that she was merely getting the officers' attention so that Derek's glasses could be returned to him, the jury was free to reject Phillips's self-serving testimony. Peters also testified that Phillips blocked the bedroom door. From the recorded evidence introduced of the incident, the jury was free to find that a person of reasonable prudence would have obeyed the officer's instructions instead of repeatedly disregarding them. As a result, the jury was free to find that, when Phillips reached between Peters and Derek during the arrest, she ought to have been aware of a substantial and unjustifiable risk that her action interfered with Peters's arrest of Derek or that Phillips's failure to perceive the risk was a gross deviation from the standard of care an ordinary person would exercise. *See id.*; *see also Segovia v. State*, 543 S.W.3d 497, 500–01 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (disregarding multiple commands from a peace officer was sufficient to find criminal negligence).

Because we find that Phillips's conviction is supported by legally sufficient evidence, we overrule Phillips's second point of error.

### III.    Phillips Did Not Preserve Her Confrontation Clause Complaint

At trial, the defense called Rugg, but he was not present. Phillips announced that Rugg was subpoenaed, but did not appear. The State noted that the return of service for Rugg's subpoena showed that Rugg was in Colorado. In her last point of error on appeal, Phillips argues that Rugg's failure to appear for trial violated her Confrontation Clause rights.

16

Generally, to preserve a complaint for appellate review, the party must make her complaint "to the trial court by a timely request, objection, or motion" that states the grounds for the ruling sought "with sufficient specificity to make the trial court aware of the complaint." TEX. R. APP. P. 33.1(a). Confrontation Clause complaints are subject to this general preservation requirement. *Davis v. State*, 313 S.W.3d 317, 347 (Tex. Crim. App. 2010). A defendant's failure to object on Confrontation Clause grounds at trial waives a Confrontation Clause complaint for appellate review. *Paredes v. State*, 129 S.W.3d 530, 535 (Tex. Crim. App. 2004).

Here, at no point did Phillips raise any Confrontation Clause complaint. Accordingly, we conclude that Phillips's last point of error is unpreserved, and we overrule it.

## IV.     Conclusion

We affirm the trial court's judgment.

Charles van Cleef
Justice

Date Submitted:     March 17, 2025
Date Decided:       April 4, 2025

Do Not Publish

17